**Sofia CAMPOS–GUARDADO, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 86–4087.**

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1987.

Rehearing and Rehearing En Banc Denied March 9, 1987.

---

Carol L. Wolchok, Political Asylum Project of the ACLU of the Nat. Capital Area, Washington, D.C., for petitioner.

Eloise Rosas, Robert L. Bombough, Dir., Office of Immigration Litigation, Madelyn E. Johnson, Civil Div., Allen W. Hausman, Asst. Director, Richard M. Evans, Washington, D.C., for respondent.

Paul B. O'Neill, Dist. Director, INS, Houston, Tex., David H. Lambert, Dist. Director, INS, New Orleans, La., for other interested parties.

Before GEE and HILL, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

Sofia Campos-Guardado appeals the denial of her requests for withholding of deportation and asylum by the Board of Immigration Appeals. She also appeals the Board's grant of only twelve days in which to depart voluntarily. We conclude that the Board did not err in construing the terms of the pertinent statutory provisions and that the record reflects substantial evidence to support the Board's conclusions that Ms. Campos is not entitled to withholding of deportation and is not eligible for a

---

* District Judge of the Western District of Louisiana, sitting by designation.

discretionary grant of asylum. Because Ms. Campos did not exhaust her administrative remedies on the issue concerning the length of time for voluntary departure, we are without jurisdiction to review that claim.

### Facts

Sofia Campos-Guardado, a native of El Salvador, illegally entered the United States in the fall of 1984.[1] After conceding deportability, she applied for asylum and withholding of deportation. In support of her applications, Ms. Campos testified about incidents of violence in El Salvador, focusing on one particular episode. In early 1984, by her account, she took a two-hour bus trip to her uncle's home, to repay a debt owed by her father. Her uncle was the chairman of a local agricultural cooperative, one formed as a result of the controversial agrarian land reform movement instituted several years earlier. When she arrived, she found her uncle apprehensive; he explained that the day before two men had demanded money he held for the co-op and he had refused them. Although frightened, she remained to visit with her cousins. Later, an older woman and two young men with rifles arrived and knocked down the door. They dragged Ms. Campos, her uncle, a male cousin and three female cousins to the rim of the farm's waste pit. They tied all the victims' hands and feet and gagged the women. Forcing the women to watch, they hacked the flesh from the men's bodies with machetes, finally shooting them to death. The male attackers then raped the women, including Ms. Campos, while the woman who accompanied the attackers shouted political slogans. The assailants cut the victims loose, threatening to kill them unless they fled immediately. They ran and were taken to a hospital in San Salvador. Ms. Campos suffered a nervous breakdown and had to remain in the hospital 15 days.

Ms. Campos did not return to live with her parents, but remained to work in a factory in San Salvador. On her first visit home, two young men arrived at the door. Her mother introduced them as cousins who had recently fled from the guerillas and moved into the neighborhood. Ms. Campos immediately recognized one of them as one of her assailants. She testified that he later sought her out several times and threatened to kill her and her family if she revealed his identity. She did not disclose what she knew. After her workplace in San Salvador was burned down by guerillas, Ms. Campos did not want to return to live at her parents' home near her cousin-assailant. She came to this country.

Affirming the immigration judge's decision, the Board held that Ms. Campos failed to meet her burden of proof to establish entitlement to withholding of deportation and statutory eligibility for asylum.

### The Law

■ An alien has two distinct statutory modes of avoiding deportation. The withholding of deportation remedy provides that the Attorney General "shall not deport or return" an alien if his life or freedom "would be threatened" in the country of deportation on account of any one, or a combination of, five enumerated grounds. These are race, religion, nationality, membership in a particular social group, and political opinion. Immigration and Nationality Act (INA) § 243(h)(1); as amended at 8 U.S.C. § 1253(h)(1).[2] This remedy is mandatory if the alien successfully shows that his or her life or freedom would be threatened upon return to the country of deportation.

---

**1.** Ms. Campos relatively recent advent renders her ineligible for legalization pursuant to the Immigration Reform and Control Act of 1986, Pub.L. No. 99–603, sec. 201, 100 Stat. 3359 (Nov. 5, 1986). Sec. 201 provides that, in order to be eligible for legalization, the alien "must establish that he entered the United States before January 1, 1982," and that he has resided continuously in the United States in an unlawful status since that date.

**2.** The INA was amended by the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102.

By contrast, the asylum remedy is discretionary; the Attorney General may grant asylum to aliens physically present in this country if they qualify as "refugees." 8 U.S.C. § 1158(a). The statute defines a refugee as one who is unwilling or unable to return to his homeland "because of persecution or a well-founded fear of persecution" on account of the same five statutory grounds that form the basis for the withholding of deportation remedy. 8 U.S.C. § 1101(a)(42)(A).

### The Issue

Ms. Campos bases her claims on two grounds, "political opinion" and "membership in a particular social group." She asserts she was persecuted in El Salvador for political opinions attributed to her by her assailants, on account of her family membership, and because of the concomitant association of the family with the agrarian land reform movement; as an eyewitness to the political assassination of her uncle and cousin, she is subject to future persecution if deported to El Salvador.

Because Ms. Campos's claim of persecution on account of "group membership" relies upon the attackers' alleged attribution of political opinions to the family group, we focus on the scope of the statutory term "political opinion." Ms. Campos contends the Board too narrowly construes this term in determining entitlement to withholding of deportation and eligibility for a discretionary grant of asylum. She asserts the Act contemplates persecution on the basis of political opinion imputed to the victim, whether rightly or wrongly, by the persecutor; the Board, she contends, impermissibly imposes as a prerequisite that the alien *personally hold* the political opinion that gives rise to the persecution.

Ms. Campos directs us to certain language in the Board's decision stating that a showing that a persecutor's conduct furthers his goal in a political controversy is insufficient to establish persecution

on account of "political opinion" within the meaning of the Act. Instead, the alien must show that it is his own, individual political opinion that a persecutor seeks to overcome by infliction of harm or suffering.

Although the Board assumed the veracity of Ms. Campos's account of the events at her uncle's house, and that the attack resulted from her uncle's political views, it nevertheless concluded that Ms. Campos "had not shown that the attackers harmed her in order to overcome any of *her own* political opinions."[3]

The Board further found it unlikely that the attackers had targeted Ms. Campos as a victim, because they could not have expected her to be present at her uncle's home that day. It concluded:

Thus, while the attackers may have been motivated by their own political goals such as, for example, the intimidation of other peasants involved in land reform, the record does not establish that [Ms. Campos] was persecuted on account of any political opinion she herself possessed or was believed by the attackers to possess.

Concerning Ms. Campos's fear of her assailant should she return to El Salvador, the Board concluded that these threats of reprisal were personally motivated—to prevent her from exposing his identity—and that there was "no indication he maintained an interest in her because of her political opinion or any other grounds specified in the Act."

Ms. Campos also contends this language indicates that the Board failed to consider all the relevant evidence. She argues the reasons motivating the persecutor are of greater importance than any opinion actually held by the victim. She asserts the record is replete with evidence that peasant leaders in the agrarian reform movement and their families are singled out for persecution; once she was in her uncle's home,

---

3. The Board noted that Ms. Campos did not establish or even assert that she personally held political opinions which would make her a target for persecution. Ms. Campos does not dispute this determination.

his political views were attributed to her. Therefore, she argues, it was unreasonable for the Board to assume that the persecutors' reasons for victimizing her were different from their political motivations behind the torture, execution and rape of her family members. Further, as an eyewitness to the political assassination of her relatives, she contends that she is now a permanent target for future persecution.

### Standards of Review

■ A denial of the withholding remedy must be sustained if supported by substantial evidence. 8 U.S.C. § 1105a(a)(4); *Young v. U.S. Dept. of Justice, I.N.S.,* 759 F.2d 450, 455–56 n. 6 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985). Because the decision whether to grant asylum is expressly at the discretion of the Attorney General, we cannot disturb the ultimate denial of asylum "absent a showing that such action was arbitrary, capricious, or an abuse of discretion." *Id.*

■ The Board's denial of relief is subject to review for errors of law. *Ka Fung Chan v. INS,* 634 F.2d 248, 252 (5th Cir. 1981); *Coriolan v. INS,* 559 F.2d 993, 999 (5th Cir.1977). Our review, however, is limited. The Supreme Court has noted that an administrator such as the Attorney General has considerable discretion in interpreting and implementing the statutory provisions of the Immigration and Naturalization Act. *INS v. Stevic,* 467 U.S. 407, 429 n. 22, 104 S.Ct. 2489, 2500 n. 22, 81 L.Ed.2d 321 (1984). We accord deference to the Board's interpretation of immigration statutes unless there are compelling indications that the Board's interpretation is wrong. *Guevara Flores v. INS,* 786 F.2d 1242, 1250 n. 8 (5th Cir.1986) (citations omitted).

### Statutory Construction

We first address Ms. Campos's contention that the Board misconstrues the scope of the "political opinion" grounds by requiring that the alien personally espouse the political belief that gives rise to the persecution. This Court has implied that a father's showing that he would be subject to harm because of his son's political activity is relevant evidence to show a well-founded fear of persecution. *Young v. U.S. Dept. of Justice, I.N.S.,* 759 F.2d at 456 & n. 7. We have also implied that membership in a group that is singled out for persecution because of political beliefs is relevant to showing a likelihood of persecution should the alien be deported. *Bahramnia v. INS,* 782 F.2d 1243, 1248 (5th Cir.1986). Under extreme circumstances, such as those obtaining under the former Duvalier regime in Haiti, the Service cannot presume that people without overt political activity, or lacking minority political opinions, will not be the victims of political persecution. *Coriolan v. INS,* 559 F.2d at 1001, 1004.

■ We do not, however, read the Board's decision as impermissibly resting on a single fatal flaw, i.e. that the alien failed to establish that she personally held the political beliefs in question. The Board specifically noted "the record does not establish that [Ms. Campos] was persecuted on account of any political opinion she herself possessed *or was believed by the attackers to possess.*" (Emphasis added). Neither does the record reveal the sort of extraordinary circumstances existing in the *Coriolan* case, circumstances that require more latitude in assessing whether the persecution is on account of political opinion.

Ms. Campos asserts the Board did not consider the relevant evidence on the political implications underlying the attack at her uncle's home and the future harm she fears. To the contrary, we find the Board specifically acknowledged the evidence about the family relationship, of her uncle's role as a leader of the farm cooperative, and the documentary evidence discussing the agrarian reform movement and human rights violations in El Salvador. Contrary to Ms. Campos's contentions, the Board considered this evidence but concluded it was insufficient to establish that the harm Ms. Campos fears is based on political opin-

ion, group membership, or a combination of the two.

■ We note that Congress chose not to define the reach of the term "political opinion." When Congress passed the Refugee Act of 1980, which amended the asylum provisions, it reiterated that it wished to "insure a fair and workable asylum policy which is consistent with this country's tradition of welcoming the oppressed of other nations." H.R.Rep. No. 608, 96th Cong., 1st Sess. 17 (1979). In passing the Act, however, the Congress specifically excluded the term "displaced persons" in its definition of refugee. An earlier version of the Senate bill had defined that term as including persons in their own country who have been displaced by military or civil disturbances or uprooted by arbitrary detention and are unable to return to their usual place of abode. *Compare* S.Rep. No. 256, 96th Cong., 1st Sess. 4 (1979) (accompanying S. 643) *with* H.Rep. No. 781, 96th Cong., 1st Sess. 19 (1979) (joint explanatory statement of the conference committee). Thus, we can infer that Congress did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances—conditions that necessarily have political implications. The issue reduces to whether the political implications underlying an alien's fear of harm rise to the level of "political opinion" within the meaning of the statute or whether those conditions constitute the type of civil strife outside the intended reach of the statute. We have recognized that "a persuasive basis for vesting substantial discretion in the Service is that the evaluation of persecution claims involves the evaluation of the political conditions of a nation—a task for which courts are not well-suited." *Coriolan v. INS,* 559 F.2d at 1001–02.

Therefore, we cannot conclude as a matter of law that the Board erred in determining that Ms. Campos's predicament was not one of feared persecution "on account of political opinion." Reviewing the record as a whole, we conclude the Board's denial of the withholding claim is supported by substantial evidence, as is its determination that Ms. Campos is statutorily ineligible for a discretionary grant of asylum.

### Differing Standards for Burden of Proof

Ms. Campos also contends that the Board applied an incorrect burden of proof standard in determining whether she was eligible for asylum. We have recently addressed this issue, which may help to clear some of the legal underbrush that has proliferated in this area.[4]

The alien has the burden of persuasion to prove statutory eligibility for both the withholding and asylum remedies. 8 C.F.R. § 242.17(c) and § 208.5. The provision governing withholding requires a determination that the alien's life or freedom "would be threatened" if he or she were deported. The Supreme Court has construed this provision as requiring the alien to show a "clear probability" of persecution. *INS v. Stevic,* 467 U.S. at 429–30, 104 S.Ct. at 2501. The Court also instructed that a clear probability is one that establishes it is "more likely than not that the alien would be subject to persecution on one of the specified grounds." *Id.*

■ The *Stevic* Court, however, expressly declined to decide the standard of proof the alien must satisfy to establish eligibility for asylum, i.e. what showing is required to establish a "well-founded fear" of persecution. Thereafter, the Board of Immigration Appeals characterized the alien's burden of proof for both forms of relief as "not meaningfully different." *In re Acosta,* I. & N. Interim Dec. 2986 (Mar. 1, 1985). We have now expressly rejected the Board's notion that the two standards converge. *Guevara Flores v. INS,* 786 F.2d at 1250 n. 8. As articulated in *Guevara,* the burden of proof in asylum cases is this:

---

**4.** We anticipate further clearing. The Supreme Court has granted writ of certiorari in a case addressing the issue whether the alien's burden of proving eligibility for asylum is equivalent to the burden of proving eligibility for withholding of deportation. *Cardoza-Fonseca v. U.S.I.N.S.,* 767 F.2d 1448 (9th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

"An alien possesses a 'well-founded fear of persecution' if a reasonable person in her circumstances would fear persecution" if deported. *Id.* at 1249. Thus, at least in this Circuit and unless the Court directs us otherwise, the INS must apply this burden of proof standard in reaching its determination on statutory eligibility for asylum.

 We turn to consider whether *Guevara,* which was issued three months after the Board's decision, might affect the outcome in today's case. The Board stated, in pertinent part:

> In the case before us, [Ms. Campos] has not met the statutory standard of eligibility for asylum, regardless of whether her claim is assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility," or a "good" or "valid reason to fear" persecution.

Although the Board purports to review the asylum claim under standards less onerous than the "clear probability" standard, it also cites *Acosta* for the proposition that there is no meaningful distinction between the two standards. Under these circumstances, we would usually remand to insure that the proper standard is applied. We perceive, however, that even if the *Guevara* standard is properly applied on remand, Ms. Campos will fare no better in obtaining eligibility for a favorable exercise of discretion. The distinction between the two burdens of proof goes to establishing the degree of certainty that persecution will occur if the alien is deported. The Board did not discuss Ms. Campos's failure to establish the requisite degree of probability of future persecution. The decision rested on different substantive grounds: Ms. Campos was found ineligible for asylum because she failed to show that the harm she fears—no matter how likely—is on account of "political opinion" or "membership in a social group," as those terms are used in the statute.

 Finally, Ms. Campos contends that the Board abused its discretion in affirming the immigration judge's grant of only twelve days in which to depart voluntarily, instead of the customary thirty days. Ms. Campos, however, did not raise this as an issue in her appeal to the Board. This failure to exhaust her administrative remedies precludes our considering this issue on appeal. 8 U.S.C. § 1105a(c); *Young v. INS,* 759 F.2d at 454 n. 2; *Ka Fung Chan v. INS,* 634 F.2d at 258.

AFFIRMED.