**Marcos Saul
ZAMORA–MOREL, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION
SERVICE, Respondent.**

No. 89–4177.

United States Court of Appeals,
Fifth Circuit.

June 27, 1990.

Lisa S. Brodvaga, Thelma O. Garcia, Harlingen, Tex., for petitioner.

Jill E. Zengler, Alice M. Smith, Richard M. Evans, Robert Kendall, Jr., Robert L. Bombaugh, Richard Thornburgh, Atty. Gen., U.S. Dept. of Justice, Civil Div., Washington D.C., John B.Z. Caplinger, Dist. Director, I.N.S., New Orleans, La., for respondent.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Marcos Saul Zamora–Morel (Zamora) seeks review of a Board of Immigration Appeals decision denying him asylum, withholding of deportation, or relief from deportation.

I.

Petitioner Zamora is a citizen of Honduras who entered the United States on May 15, 1983. On May 17, 1983, Zamora was served with an Order to Show Cause alleging that he was deportable pursuant to § 241(a)(2) of the Immigration & Nationality Act, 8 U.S.C. § 1251(a)(2), because he entered the country without inspection. For unexplained reasons, no action was taken on Zamora's deportation for approximately five years.

During the five-year period between the Order to Show Cause and the deportation proceedings, Zamora married a temporary resident of the United States. Zamora and his wife now have two children who are United States citizens. On December 6, 1984, Zamora pleaded guilty to the unlawful possession of less than 2 ounces of marihuana in Cameron County, Texas. The Cameron County court convicted Zamora of this offense, fining him $150 and sentencing him to 15 days in jail. Three years later, on December 2, 1987, Zamora again pleaded guilty to the unlawful possession of less than 2 ounces of marihuana in Cameron County, Texas. On this occasion, however, Zamora was not convicted. Instead, the Cameron County court deferred adjudication of Zamora's guilt or innocence under the Texas deferred adjudication statute. Texas Code Crim.Proc.Ann. art. 42.12, § 5 (Vernon Supp.1990).

On June 30, 1988, deportation proceedings against Zamora were re-instituted when he was served with the Immigration and Naturalization Service's notice of additional charges of deportability. The INS charged that Zamora was deportable under § 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11), because he had been convicted of violations of controlled substance

laws. Specifically, the INS charged Zamora with having been convicted twice of marihuana possession.

On July 15, 1988, Zamora filed his Request for Asylum in the United States. Zamora claimed that he had been persecuted in Honduras because of his political opinions and his membership in a trade union.

Also on July 15, 1988, Zamora appeared with his attorney before an immigration judge (IJ). After noting that Zamora contested only the drug conviction allegations, the IJ continued the hearing until a later date to allow the INS to assemble proof of the convictions. When the hearing resumed, the INS called Zamora to the stand. Counsel for the INS introduced the records of Zamora's 1984 marihuana conviction and elicited testimony from Zamora that corroborated the documentary evidence. The INS attorney then began to question Zamora about the 1987 charges. When the INS attorney attempted to introduce the documentary evidence related to this 1987 charge, however, the IJ balked and expressed his view that a deferred adjudication was not a final conviction for deportation purposes. After an off-the-record conference, the INS withdrew item six of the deportation charges, the allegation addressing Zamora's 1987 deferred adjudication. The INS attorney physically scratched out item six on the Additional Charges of Deportability, wrote "withdrawn 9–30–88," and initialled this section.

At a later hearing before the IJ, Zamora's attorney called Zamora to the stand to testify in support of his claim for asylum or withholding of deportation. Zamora testified that in 1975, he began work at the Bemis–Handal factory in San Pedro Zula, Honduras. Zamora worked as a "concierge," essentially an errand boy for management. Zamora's duties included routing correspondence, obtaining office supplies, and occasionally taking deposits to the bank. Zamora joined a trade union and attended union meetings. Although Zamora testified that relations between management and the union were strained, he claimed that no strikes or work stoppages occurred while he was employed at the factory.

At some point, the union made a number of demands on the company. These demands were not met. The union then decided to stage a strike. Zamora testified that on March 7, 1979, "when we presented ourselves to our station, the factory was in flames." Apparently, the strike had begun and the military had been called in to remove the striking workers. At some point, the factory caught fire. Approximately 150 factory employees were arrested. Zamora asserts that he was one of the arrested workers. Zamora testified that after he was arrested he was held by the Honduran military for approximately four months and was tortured in an attempt to force him to accept responsibility for setting the fire. Zamora testified that his brother-in-law, a member of the Honduran military, helped Zamora escape from prison. Zamora allegedly hid out in the mountains for the next three years. Eventually, he returned to Tegucigalpa where he was recognized and was re-captured by the authorities. Zamora claims he again was held for four months and again was tortured in an attempt by the military to force him to accept responsibility for setting the Bemis–Handal factory fire. Zamora claims he again escaped, this time by breaking the wooden bars of his prison cell. Zamora then entered the United States.

After both sides rested and after the IJ retired to prepare his decision, Zamora's attorney approached the IJ and sought to apply for relief under § 241(f)(2) of the Act, 8 U.S.C. § 1251(f)(2). This section vests the Attorney General with discretion to suspend deportation under § 241(a)(11) (deportability for violation of controlled substance laws) if the alien has only "a single offense of simple possession of 30 grams or less of marihuana ..., has a child who is a citizen of the United States ... [and if] the alien's deportation would result in extreme hardship to the United States citizen ... child...." The IJ refused to consider Zamora's request, labelling it untimely.

The immigration judge found Zamora deportable under § 241(a)(2) of the Act. (Za-

mora had conceded deportability under this section for entry without inspection.) The IJ also found Zamora deportable under § 241(a)(11) of the Act because of the single 1984 marihuana possession conviction. The IJ then found that Zamora's testimony was not credible and that Zamora had not established a well-founded fear of persecution. Consequently, the IJ denied Zamora's request for asylum or for withholding of deportation.

Zamora appealed the IJ's decision to the BIA, claiming the IJ erred in refusing to consider Zamora's request for relief under § 241(f)(2) of the Act, in finding that Zamora's testimony was not credible, and in concluding that Zamora had not proved his eligibility for asylum or withholding of deportation. The BIA held that the IJ did not err in refusing to consider Zamora's request for § 241(f)(2) relief, because Zamora was ineligible for relief under this section. The BIA reached this conclusion by finding that Zamora's 1987 deferred adjudication constituted a final conviction for purposes of deportation. This conclusion was reached in spite of the fact that the deferred adjudication had been withdrawn by the INS from the case. Because the BIA determined that Zamora had two marihuana convictions, it concluded that he did not qualify under § 241(f)(2). The BIA next held that irrespective of the credibility of Zamora's testimony, Zamora had failed to establish that any persecution he might have suffered was the result of a political opinion or his membership in a particular social group. The BIA, therefore, refused Zamora's request for asylum or withholding of deportation.

Zamora seeks a determination that he is eligible for asylum or withholding of deportation. Alternatively, Zamora seeks relief from deportation under § 241(f)(2) of the Act.[1]

## II.

Congress has created three remedies by which an alien may avoid deportation. The first two are considered together. First, the withholding of deportation remedy under § 243(h) of the Act, 8 U.S.C. § 1253(h), directs the Attorney General to withhold deportation of an alien who demonstrates that his or her "life or freedom would be threatened" in the country of origin on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion. To qualify for withholding of deportation, an alien must show that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds." *INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984).

Second, the asylum remedy at § 208(a) of the Act, 8 U.S.C. § 1158(a), authorizes the Attorney General, in his or her discretion, to grant asylum to "refugees." Section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42), defines "refugee" as one who is unable or unwilling to return to his or her homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." To prove that he or she possesses a well-founded fear of persecution, an alien must demonstrate that a reasonable person in his or her circumstances would fear persecution if deported. *Guevara Flores v. INS*, 786 F.2d 1242, 1249 (5th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987). The alien must also establish, however, that the feared persecution is "on account of" one of the five enumerated factors. *See Campos–Guardado v. INS*, 809 F.2d 285, 291 (5th Cir.1987), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). By demonstrating a well-founded fear of persecution, however, the alien establishes only that he or she is eligible for consideration for asylum. The ultimate decision to grant or deny asylum rests in the hands of the Attorney General.

---

**1.** Although Zamora will remain deportable pursuant to § 241(a)(2) of the Act (entry without inspection) even if he obtains relief under § 241(f)(2), Zamora pursues this relief in an attempt ultimately to qualify for voluntary departure. Zamora claims that if he qualifies for voluntary departure, he can legally immigrate to the United States when his wife becomes a permanent resident.

██ We review the BIA's factual conclusion that an alien is not eligible for withholding of deportation only to determine whether it is supported by substantial evidence. *Young v. I.N.S.*, 759 F.2d 450, 455–56 n. 6 (5th Cir.1985), *cert. denied*, 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985). The same substantial evidence standard governs our review of the BIA's factual conclusion that an alien is not eligible for consideration for asylum. *See Campos–Guardado*, 809 F.2d at 290 ("[w]e conclude the Board's denial of the withholding claim is supported by substantial evidence, *as is its determination that Ms. Campos is statutorily ineligible for a discretionary grant of asylum,* (emphasis added)). *See also, Arteaga v. I.N.S.*, 836 F.2d 1227, 1228 (9th Cir.1988). The Attorney General's ultimate decision whether to grant or deny a refugee asylum, however, must be upheld "absent a showing that such action was arbitrary, capricious or an abuse of discretion." *Young v. I.N.S.*, 759 at 455 n. 6.

██ Zamora bases his claim for asylum or *withholding* of deportation in part on an allegation that he was persecuted and fears further persecution on account of his political opinions. The BIA found "no evidence of [persecution] due to a political opinion." This is a finding of fact that we review under the substantial evidence test. *See Campos–Guardado*, 809 F.2d at 290.[2] Our examination of the administrative record reveals that Zamora did not support his claim that he held a political opinion other than the possibility that such an opinion was manifest in his mere membership in a labor union. In fact, when the IJ asked Zamora's attorney whether Zamora feared "persecution … both because of his political opinion and because of his membership in a particular social group," the attorney replied "[t]hat's correct [but] I think more than anything it would be membership in a particular social group." We

conclude that substantial evidence supports the BIA's determination that Zamora did not prove that the persecution he fears would be on account of his political opinion.

██ Zamora also claimed he was persecuted on account of his membership in the trade union. The BIA rejected this claim, concluding that Zamora "was arrested on suspicion of complicity in the fire that destroyed the factory." Zamora testified that management did not know he was a union member. He testified that all the workers present at the factory when the fire broke out were arrested, regardless of union affiliation. His testimony indicated that the workers who were not present at the factory were not arrested, although most also were union members. Zamora disclosed that although the local union for the Bemis–Handal factory ceased to exist after the arrests, the national union continued to function. In light of this testimony, we must conclude that substantial evidence supports the BIA's conclusion that Zamora's arrest and subsequent mistreatment were not on account of his membership in the trade union.

An alien who seeks asylum or withholding of deportation must demonstrate that he or she has been persecuted or fears future persecution on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. The BIA found that Zamora's past mistreatment and his fear of future persecution were not the result of his political opinions or his membership in the trade union. Because these findings are supported by substantial evidence, we affirm the BIA's denial of asylum or withholding of deportation.

### III.

██ The third remedy is relief from deportation. Zamora challenges the BIA's conclusion that he had two controlled sub-

---

2. In reviewing BIA decisions that interpret the Act, we are constrained to give the INS deference as the agency charged by Congress with this responsibility. *See I.N.S. v. Cardoza Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987) (quoting *Chevron U.S.A., Inc.*

*v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). This deferential standard does not, however, govern our review of the BIA's factual conclusions on eligibility.

stance convictions and therefore was ineligible for relief under § 241(f)(2). Section 241(f)(2) relief is restricted to aliens who have had no more than one such conviction.

 Although the IJ found Zamora deportable under § 241(a)(11) for only the 1984 conviction, the BIA concluded that Zamora was deportable for both the 1984 conviction and the 1987 deferred adjudication. The BIA ruled that "it is of no relevance that the INS withdrew allegation number six," the allegation charging that Zamora was deportable for the 1987 deferred adjudication. We do not accept such a blatant failure of the INS to follow its own rules and regulations. The INS, under its regulations, is required to give an alien notice of the charges of deportability against him or her. 8 C.F.R. § 242.1(b). Once the INS withdrew allegation number six, it no longer constituted a valid charge against Zamora nor a valid part of the record. The BIA could not properly resurrect this withdrawn allegation to reach an after-the-fact conclusion that Zamora was deportable for the deferred adjudication. Consequently, the BIA erred in holding that Zamora was deportable for two convictions and therefore was not eligible for consideration for relief under § 241(f)(2).[3]

 We now evaluate whether the IJ erred in refusing to decide the merits on Zamora's request for § 241(f)(2) relief. An alien is entitled to request § 241(f)(2) relief. 8 C.F.R. § 242.17(d). This request must be made "during the hearing" before the IJ. 8 C.F.R. § 242.17(e). Zamora's request was made after the parties rested but before the IJ rendered his decision. The INS argues that this request was untimely and that Zamora instead should have brought a motion to reopen the hearing.

The INS regulation on reopening hearings provides that an IJ may "reopen or reconsider any case in which he/she [has] made a decision...." 8 C.F.R. § 242.22. Thus, until the IJ announces a decision, a motion to reopen is premature. The alien's only other option is to bring his or her request to the IJ as soon as he or she becomes aware of possible entitlement to relief, even if the alien already has rested the case. Certainly, it would be improper for an alien who becomes aware after resting that he or she may qualify for relief under the Act to fail to disclose this potential avenue of relief to the IJ until after the IJ renders a decision. Instead, the alien should bring the request before the IJ as soon as there is realization of the possibility of such relief. Zamora voiced his request as soon as he became aware that § 241(f)(2) might provide him relief and before the IJ made his decision. We reject the INS' contention that this request was untimely.

The IJ erred in refusing to consider Zamora's request for relief under § 241(f)(2). Zamora has not had an opportunity to demonstrate that he is eligible for such relief. (He must show, for example, that his 1984 conviction for marihuana possession was for possessing less than thirty grams of marihuana.) If Zamora demonstrates eligibility, he is likely entitled to a favorable exercise of discretion.[4] We therefore remand the case for consideration of Zamora's request for § 241(f)(2) relief.

### IV.

We affirm the BIA's denial of asylum and withholding of deportation. We reverse the BIA's conclusion that Zamora is ineligible for consideration for § 241(f)(2) relief. We remand the case for a determi-

---

3. We note that even if the allegation about Zamora's deferred adjudication had been pleaded and proved, such a deferred adjudication would not constitute a final conviction for purposes of § 241(f)(2). *See Martinez–Montoya v. INS*, 904 F.2d 1018 (5th Cir.1990) (holding that a deferred adjudication under the Texas deferred adjudication statute was not a final conviction for purposes of the comparable Immigration Reform and Control Act).

4. We note that the IJ decided that if Zamora had demonstrated eligibility for asylum, then Zamora would have been entitled to a favorable exercise of discretion. Thus, we anticipate that if Zamora demonstrates eligibility under § 241(f)(2), he will be deemed entitled to a favorable exercise of discretion.

nation of Zamora's eligibility for relief under this provision of the Act.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.