993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clement Ugo MBA, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-2472.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 18, 1993
Decided: April 27, 1993
 
 On Petition for Review of an Order of the Immigration & Naturalization Service. (A28-297-701)
 Clement Ugo Mba, Petitioner Pro Se.
 Richard Michael Evans, Robert Kendall, Jr., Karen Fletcher Torstenson, Stewart Deutsch, United States Department of Justice, Washington, D.C., for Respondent.
 I.N.S.
 AFFIRMED.
 Before PHILLIPS and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Clement Ugo Mba appeals from a decision and order of the Board of Immigration Appeals (Board) affirming a deportation order. Finding no error in the Board's decision, we affirm.
 
 
 2
 Mba, a twenty-eight year old male alien and native citizen of Nigeria, was first admitted to the United States as a non-immigrant student in August 1982. Mba remained in the United States until traveling home to Nigeria in late 1984 or early 1985. Prior to his departure, Mba married Arnicia Logan, a United States citizen. Mba returned to the United States on March 2, 1985, as a non-immigrant student. Following his return from Nigeria, Mba applied for permanent resident status based on his purportedly legitimate marriage to Logan.
 
 
 3
 The Immigration and Nationality Service (INS) learned that Mba's marriage had been arranged by a marriage broker so that Mba could obtain permanent residence in the United States. Mba was prosecuted in the United States District Court for the District of Columbia under 18 U.S.C. § 371 (1988) and 18 U.S.C. § 1001 (1988). Mba pled guilty to one count of conspiracy to violate the immigration laws under § 371 in August 1987.
 
 
 4
 Mba admitted to the Immigration Court that he had agreed to pay a marriage broker $2,000 to arrange his marriage to Logan. Mba further admitted that he married Logan in order to obtain permanent resident status and remain in the United States. Mba was fined $1,000 and ordered to perform one hundred hours of community service. Imposition of Mba's sentence was otherwise suspended and he was placed on probation for three years subject to the above special conditions.
 
 
 5
 In October 1987 Mba received an Order to Show Cause charging him with deportability under the Immigration and Nationality Act (Act), 8 U.S.C.A. § 1252b(a)(1) (West Supp. 1992). Mba was represented by counsel at the initial deportation hearing, where he admitted that he had entered the United States as a non-immigrant student and married Logan, but denied the remainder of the allegations. The deportation hearing continued on February 10, 1988; Mba essentially admitted the facts of the remaining allegations in the Show Cause order, but asserted that he did not know that arranged marriages were unlawful under immigration laws.
 
 
 6
 Based on the evidence presented, the immigration judge concluded that Mba's marriage had been a sham relationship entered into for the purpose of gaining benefits under United States immigration laws. The immigration judge determined that Mba's misrepresentation to the INS that he had married his wife out of love and affection constituted a breach of 8 C.F.R. § 214.1f (1992), which requires full disclosure by non-immigrants of all information requested by the INS.
 
 
 7
 The immigration judge reasoned that willful failure by a nonimmigrant to provide full and truthful information to the INS constituted a failure to maintain status under the Act. 8 U.S.C.A. § 1251(a)(9) (West 1970) (current version at 8 U.S.C.A. § 1251(a)(1)(C)(i) (West 1970 & Supp. 1992).* Accordingly, the immigration judge ordered Mba deported to Nigeria.
 
 
 8
 The immigration judge denied Mba's request for voluntary departure, finding that Mba was statutorily precluded from that privilege based on his conviction of a crime involving moral turpitude. The immigration judge opined that Mba's conviction involved willful and unlawful misrepresentations to the INS, thereby precluding him from demonstrating the good moral character required to establish eligibility for voluntary departure under the Act. 8 U.S.C.A. § 1254(a)(1) (West 1970 & Supp. 1992); 8 U.S.C.A. § 1101(f)(3) (West 1970 & Supp. 1992).
 
 
 9
 Mba appealed the February 1988 deportation order to the Board of Immigration Appeals. Mba's retained counsel filed a notice of appeal and requested an extension of time to file a brief. The Board granted the extension of time, but Mba's attorney never filed a brief. On September 25, 1992, the Board summarily dismissed Mba's appeal in accordance with 8 C.F.R. § 3.1(d)(1-a) (1992). Mba timely appealed, asserting that he was unaware that his attorney had failed to file a brief on his behalf.
 
 
 10
 We must uphold the factual findings supporting the Board's determination of deportability if supported by reasonable, substantial, and probative evidence. 8 U.S.C.A. § 1105a(a)(4) (West 1970 & Supp. 1992); 8 U.S.C.A. § 1252(b)(4) (West 1970 & Supp. 1992); Woodby v. INS, 385 U.S. 276, 281-84 (1966); Mortazavi v. INS, 719 F.2d 86, 87 (4th Cir. 1983). To reverse the Board's decision under the substantial evidence standard, an alien "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find" in his favor. INS v. Elias-Zacarias, 60 U.S.L.W. 4130, 4132 (U.S. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20 (1966).
 
 
 11
 Courts accord considerable deference to the Board's interpretation of statutes it administers. Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir. 1991); Chiravacharadhikul v. INS, 645 F.2d 248, 251 (4th Cir.), cert. denied, 454 U.S. 893 (1981); see also Campos-Guardado v. INS, 809 F.2d 285, 289 (5th Cir.) (deferring to Board's interpretation of immigration statutes absent compelling indications that Board's interpretations are wrong), cert. denied, 484 U.S. 826 (1987).
 
 
 12
 The Board dismissed Mba's appeal in accordance with 8 C.F.R. § 3.1(d)(1-a), which authorizes the Board to summarily dismiss any appeal where the appellant fails to specify the reasons for his appeal in his notice of appeal. Mba's counsel was granted an extension of time in which to file a brief setting forth the details of the appeal. Mba asserts that he retained and continued to pay his attorney throughout 1992, believing that his attorney was preparing a brief on Mba's behalf. Mba later learned, however, that his attorney never filed a brief with the Board and was actually involved in disciplinary proceedings before the District of Columbia Bar between 1988 and 1991.
 
 
 13
 Mba urges us to remand his case to the Board because: (1) his Fifth Amendment right to due process through representation by counsel was violated; and (2) he is eligible for voluntary departure.
 
 
 14
 The Act specifically provides an alien with the right to representation at deportation proceedings by counsel of his choosing, at his own expense. 8 U.S.C. § 1362 (1988); 8 U.S.C.A.s 1252(b)(2) (West 1970 & Supp. 1992). Moreover, courts have held that the Fifth Amendment entitles an alien to due process at a deportation hearing, and that incompetence of counsel may result in a denial of that due process right. Mantell v. INS, 798 F.2d 124, 127 (5th Cir. 1986); RiosBerrios v. INS, 776 F.2d 859, 862 (9th Cir. 1985).
 
 
 15
 Mba asserts that, like the aliens in the above cases, his statutory right to counsel and constitutional right to due process were violated because his attorney failed to file a brief with the Board. Mba was represented by counsel of his choosing at the deportation hearing. Mba's attorney objected where appropriate, presented evidence, and cross-examined witnesses. Therefore, we find that Mba clearly received the assistance of counsel of his choosing at the deportation hearing.
 
 
 16
 Although Mba's attorney filed a timely notice of appeal with the Board, he failed to file a brief as ordered by the Board. Failure to perfect an appeal may constitute ineffective assistance of counsel. However, to obtain the requested relief, Mba was required to demonstrate that his counsel's ineffectiveness resulted in prejudice to him. Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989); see also Barrese v. Ryan, 189 F. Supp. 449, 452 (D. Conn. 1960) (holding that alien was deprived of his privilege of being represented by counsel of his choosing on appeal before the Board). We find that Mba failed to allege any facts to support a finding of prejudice.
 
 
 17
 Mba's main argument is that his attorney's failure to file a brief prejudiced his right to obtain voluntary departure in lieu of deportation. Mba claims that had his attorney filed a brief with the Board, he might have been granted voluntary departure under 8 C.F.R. § 242.5 (1992), and 8 U.S.C.A. § 1254(e)(1) (West Supp. 1992).
 
 
 18
 However, the immigration judge reasoned that Mba's conspiracy conviction stemmed from the crime of willfully and unlawfully misrepresenting a material fact to the INS, which is a crime of moral turpitude. 18 U.S.C. § 1001 (false statements are crimes or acts constituting moral turpitude). Therefore, the immigration judge correctly found that Mba was ineligible for voluntary departure, because his offense involved moral turpitude and therefore precluded him from satisfying one of the criteria for voluntary departure. 8 U.S.C.A. §§ 1182(a)(2), 1254(a)(1); see also 8 U.S.C.A. § 1101(f)(3) (alien who has been convicted of crime involving moral turpitude is not considered a person of good moral character).
 
 
 19
 The Board based its summary dismissal on Mba's counsel's failure to specify the reasons for the appeal. 8 C.F.R.s 3.1(d)(1-a). Even if Mba or his counsel had filed a brief, however, we find that the Board could properly have affirmed the immigration judge's deportation order and denial of Mba's application for voluntary departure. Because the evidence was sufficient to support the immigration judge's order, and because Mba was not entitled to voluntary departure anyway, Mba failed to demonstrate that he was prejudiced by his attorney's failure to perfect his appeal.
 
 
 20
 For the reasons set forth above, we affirm the decision of the Board. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Voluntary departure is not available to an alien convicted of a crime of moral turpitude for which the maximum possible penalty is more than one year, regardless of the sentence actually imposed on the alien See 8 U.S.C.A. §§ 1101(f)(3), 1182(a)(2), 1254(a)(1) (West 1970 & Supp. 1992). The maximum possible penalty for Mba's offense of conviction was five years. 18 U.S.C. § 371