NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0200n.06
Filed: March 18, 2005

No. 03-4517

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **LEJLA ERKOCAJ, FLAMUR ERKOCAJ, and ASTRIT ERKOCAJ,** | ) ) ) | ON PETITION FOR REVIEW FROM A FINAL ORDER OF T H E   B O A R D   O F IMMIGRATION APPEALS |
| *Petitioners,* | ) ) | |
| v. | ) ) | |
| **JOHN ASHCROFT,** | ) ) ) | |
| *Respondent.* | | |

BEFORE:    COLE and GIBBONS, Circuit Judges, and SCHWARZER, District Judge[*]

**R. GUY COLE, JR., Circuit Judge.**  This is an immigration case.  Petitioners Lejla

Erkocaj, Flamur Erkocaj, and Astrit Erkocaj contest the Board of Immigration Appeals ("BIA")

summary decision affirming Immigration Judge Robert Newberry's decision denying their

application for asylum and withholding of removal.  For the following reasons, we **AFFIRM** the

decisions of the immigration judge and the BIA in all respects.

## I.

Petitioners are a family of Albanian nationals who entered the United States on or about

December 25, 2000, on a tourist visa and stayed longer than authorized.  After being contacted by

---

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District
of California, sitting by designation.

the Immigration and Naturalization Service, Petitioners sought asylum and withholding of removal under the Immigration and Naturalization Act, 8 U.S.C. § 1101 *et seq.*, and the United Nations Convention Against Torture. The immigration judge denied asylum and withholding of removal, and found the Petitioners removable. The BIA summarily affirmed the immigration judge, and Petitioners timely appealed.

Petitioner Lejla Erkocaj ("Lejla") testified that three incidents support her claim for asylum. Petitioners Flamur Erkocaj, Lejla's husband, and Astrit Erkocaj, her son, seek asylum based on the same incidents. Lejla testified that she has been an activist and leader in the Democratic Party in Albania since the early 1990s. On June 17, 1996, she claims her home was robbed, resulting in the loss of $2000 and jewelry. When she returned home from the market on this date, two men wearing masks were standing in her bedroom. The men hit her with an iron bar, and she testified that the resulting injury required seven stitches. However, when attempting to view the scar in proceedings before the immigration judge, neither Lejla's attorney nor the immigration judge could find a visible mark. Lejla testified that one of the men who robbed her was her neighbor, a supporter of the Socialist Party. Lejla's son contacted the police regarding the robbery and beating, but apparently no arrests were made.

The next incident occurred on August 20, 2000. Lejla testified that she heard a loud noise inside her house, and found several people inside who "had entered in to steal." Lejla was not physically abused during this incident, but her mouth was bound and she fell unconscious. Though nothing was stolen, Lejla testified that the intruders were attempting to steal her Democratic Party membership card. Lejla reported the incident to the police but they took no action. Lejla further

testified that she received a phone call afterwards indicating that her Socialist Party neighbor was involved in the robbery.

Another incident occurred on September 18, 2000. On that date, two men wearing masks followed Lejla home as she returned from a Democratic Party meeting. The men threatened her, grabbed her face, and told her she should not be an activist. The men then commented on her appearance in a way that caused Lejla to fear that she was going to be raped. However, after she screamed, several people came to her aid, causing the masked men to flee. Lejla testified that one of the men was her neighbor, the same man who had robbed her in 1996 and August 2000.

Though Lejla at first testified that she was not physically abused during this incident, she later testified that she was. In her application, Lejla stated that the assailants had grabbed and punched her. When asked about the apparent inconsistency before the immigration judge, Lejla admitted that she may have been confused, because the incident was emotionally upsetting.

**II.**

This Court has jurisdiction over final orders of removal pursuant to 8 U.S.C. § 1252. Because the BIA affirmed the immigration judge without opinion, this Court reviews the decision of the immigration judge directly. *Denko v. I.N.S.*, 351 F.3d 717, 732 (6th Cir. 2003).

Petitioners essentially argue that the incidents described in Lejla's testimony compel a finding of political persecution. We may reverse a finding by the immigration judge only if the evidence presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 484 (1992). Adverse credibility determinations of the BIA or immigration judge are "conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary." *Pilica v. Ashcroft*, 388 F.3d 941, 952 (6th Cir. 2004) (citation omitted); *Adhiyappa v. I.N.S.*, 58 F.3d 261, 267-68 (6th Cir. 1995).

An applicant may qualify as a refugee based solely on past persecution. 8 C.F.R. § 1208.13(b)(1). Persecution is an "extreme concept" that entails more than harassment, verbal intimidation, or discrimination. *Ali v. Ashcroft,* 366 F.3d 407, 410 (6th Cir. 2004); *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998). Rather, persecution usually requires "physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch,* 146 F.3d at 390. If past persecution is established, a rebuttable presumption arises that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). However, the immigration judge has discretion to deny asylum if it is established by a preponderance of the evidence that changed country conditions indicate there is no well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1)(i)(A).

Petitioners' sole argument on appeal is that the immigration judge improperly determined that there was no past persecution. As part of the argument, Petitioners state that the immigration judge determined that Lejla testified credibly. Petitioners' Br. at 10 ("The immigration judge concluded that the petitioner although testified credibly was not eligible for asylum because she did not show past persecution."). However, this is simply incorrect. The immigration judge's opinion clearly finds that Lejla is not credible, and discusses Lejla's problematic credibility and testimony at length. Immigration Judge Op. at 6 ("Her testimony was not credible. It was often not direct; and, it is just unbelievable."). Given the failure to contest properly the immigration judge's adverse credibility determination, Petitioners have waived the issue. *See Dedgjonaj v. Ashcroft*, 106 Fed.

Appx. 422, 423, 2004 WL 1794635 (6th Cir. 2004); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996). Given this waiver, affirmance is supportable on that basis alone. In other words, since Lejla's testimony was highly suspect, she did not establish past persecution.

Even if we assume that Lejla's testimony was credible, Petitioners have not shown that such testimony establishes past persecution. The three incidents which she cites as support for her claim for asylum are: (1) a robbery and beating in her home (June 17, 1996 incident); (2) another robbery in her home (August 20, 2000 incident); and (3) harassment and simple assault (grabbing or punching), and threatening a possible sexual assault (September 18, 2000 incident). Lejla herself notes that she suffered no abuse or harassment from the Albanian government in any of these incidents.

Of the first two incidents, the only nexus between the incidents and Lejla's political activity is the assertion that her neighbor, a prominent Socialist, was involved in the robberies. Lejla does not assert that the robberies were sponsored by the government, or that the neighbor was somehow an agent of the government. Though Lejla testified that the police were unresponsive to the robberies, there is no evidence that such lack of an adequate response was the result of political persecution, as opposed to general instability in Albania. *See Campos-Guardado v. I.N.S.*, 809 F.2d 285, 290 (5th Cir. 1987) ("Congress did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances . . . ."). Regarding the third incident, the assailants did state that Lejla should not be involved in politics. But Lejla testified that the incident was halted before any significant physical harm occurred. Again, there is no evidence to support the conclusion that this incident constitutes political persecution. *Mikhailevitch*, 146 F.3d at 390 (noting that

persecution entails more than harassment, verbal intimidation, or discrimination).  Furthermore, there is insufficient evidence to compel a reasonable factfinder to conclude that the pattern of alleged criminal activity was motivated by Lejla's political affiliation.  Rather, it is just as reasonable that more pedestrian criminal motivations – such as financial gain or violent intent – were the motivation for the alleged criminal activity.

## III.

For the foregoing reasons, we **AFFIRM** the decisions of the BIA and immigration judge in all respects.