NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0771n.06
Filed: October 18, 2006

No. 04-4460

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **AUDREY SANDRA MAYELA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner,* | ) | IMMIGRATION AND |
| | ) | NATURALIZATION SERVICE |
| v. | ) | |
| | ) | NO. 04-4460 |
| **ALBERTO GONZALES**, | ) | |
| | ) | **O P I N I O N** |
| *Respondent.* | ) | |

**BEFORE:**   **COLE, GILMAN, and FRIEDMAN,**[*] **Circuit Judges.**

**Friedman, Circuit Judge.**   This appeal challenges the Board of Immigration Appeals

("Board")'s affirmance of the immigration judge's denial of asylum, withholding of removal, and

protection under the Convention Against Torture.  We AFFIRM.

I

The appellant, Audrey Sandra Mayela, a national of the Republic of the Congo, entered the

United States in November, 2000.  In January and September, 2002, she timely sought asylum (the

government had initiated removal proceedings in March, 2002), withholding of removal and

protection under the Convention Against Torture.  In support of her application, Mayela submitted

several documents, including a membership card from the Congolese Movement for Democracy and

---

[*]Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the
Federal Circuit, sitting by designation.

Development (in which she said she was active and to which she said her father and brother also belonged), a national identification card from the Republic of the Congo, a birth certificate for her and her son, and a faxed statement from a priest from Gabon, who arranged her transportation to the United States.

At the hearing on her application before an immigration judge, Mayela testified that she was from the Republic of the Congo and had a son there in 1977; that she fled the Congo during a civil war after her brother disappeared, soldiers attempted to rape her and her mother, killed her father, and burned down their house; and that she escaped from the house and fled on foot across the Congo to Gabon, where she stayed at a church for approximately two years. She initially testified that the church was not part of a refugee camp, although her later testimony and her application stated that it was. She testified that she did not feel safe in Gabon because the president's wife was the daughter of the president of the Congo, so she flew to Chicago and stayed in the United States. She had another child in the United States.

In an oral opinion rendered the same day as the evidentiary hearing, the immigration judge denied Mayela's application. He ruled that she was not credible. He stated that the birth certificate of her son was "published" or "issued"in 2001, after she had arrived in the United States; that the party membership card "had information on it, on the front page, that was inconsistent with the personal information with respect to her that would have existed as of the date of the issuance"; and that both documents were in "mint condition" despite her alleged two-day journey on foot across the Congo and her lengthy stay in Gabon. He concluded that these two documents were "fabricated" and "monstrously fraudulent." He also stated that she had claimed she was never married, even though

she had been living with a man for a period of time (at first claiming two years and then four years). Next, he stated that her change in description of her Gabon residence from a Church to a refugee camp was inconsistent. Finally, he noted that she stated at her first asylum interview that before he disappeared her brother went out for something to eat, and then stated he went to a political rally, before once again stating he went out to eat.

For these reasons, the immigration judge concluded that "material elements" of her claim were "deliberately fabricated," and thus her application was frivolous under 8 U.S.C. § 1158(d)(6).

The immigration judge further concluded that even if Mayela were credible, she had not shown past persecution or a well-founded fear of future persecution, or that "anybody would be interested in her if she were even to go to the Congo or [sic] let alone that it is more likely than not anybody would persecute her or torture her."

The Board affirmed without opinion in an order by a single member. In that situation, we review the decision of the immigration judge, not that of the Board. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

II

Appellate review of credibility determinations is extremely limited and highly differential. In making those determinations the trier of fact has observed the witness' demeanor and all aspects of her testimony - factors that ordinarily would not be discernable by an appellate tribunal reviewing the written transcript. "Credibility determinations are considered findings of facts, and are reviewed under the substantial-evidence standard. This is a deferential standard: A reviewing court should not

reverse 'simply because it is convinced that it would have decided the case differently.'" *Sylla v. INS*, 388 F.3d 924, 925-26 (6th Cir. 2004) (citations omitted).

On the other hand, "[w]hile an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They 'cannot be based on an irrelevant inconsistency.' 'If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.''" *Id.* at 926 (citations omitted).

The "mint condition" of two of Mayela's supporting documents, which she allegedly carried in her flight across the Congo to Gabon and from there to the United States, may have rendered those documents suspect and of questionable authenticity. Standing alone, however, and without additional evidence, that is insufficient to support the immigration judge's finding that the documents were "deliberately fabricated" or fraudulent. *Cf. Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005). We therefore cannot sustain the immigration judge's determination that Mayela's application was frivolous.

Except as noted below, however, the other findings upon which the immigration judge based his finding of non-credibility are supported by the record and justify his conclusion. These include the birth certificate for her son (which she testified she obtained "[w]hen he was born" but which was dated after she allegedly left the Congo), her inconsistent statements about where she lived in Gabon, and her inconsistent explanations of why her brother left the house in the Congo when he disappeared. We therefore uphold the immigration judge's finding that Mayela was not credible -

a finding that undercuts both her claim in her asylum application and in her testimony, that she had a reasonable fear of political persecution if she returned to the Congo.

Contrary to the immigration judge's conclusion, however, her statement that she had never married was not rendered false because she had lived with a man for several years and had a child.

But even without his findings of non-credibility, the immigration judge validly rejected Mayela's application because of his finding that she had "not demonstrated that she has a well-founded fear of future persecution." For Mayela to be eligible for asylum or withholding of deportation, she must show that she has a fear of persecution that is on account of her political views, *Campos-Guardado v. INS*, 809 F.2d 285, 289-90 (5th Cir. 1987), and that her fear was "subjectively genuine and objectively reasonable." *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005). She has not so shown.

Mayela's claim that she likely would be subject to political persecution rests primarily upon her alleged membership in the Congolese Movement for Democracy and Development, which she described as an organization whose members, because of their opposition to the government, are persecuted. To support this claim, she points to her brother's alleged disappearance after he attended a political rally and the soldiers' alleged attempt to rape her and her mother, the murder of her father, and the burning down of the family house.

The 2002 Department of State Country Report on the Republic of the Congo, however, referred to the Congolese Movement for Democracy and Development, as a "[m]ajor political part[y]," and stated that "[o]pposition parties were able to campaign openly during the year, hold rallies and press conferences, and place their supporters inside polling places to monitor elections."

It also noted that since the 1997 civil war that overthrew the former Sassou-Nguesso government, "many senior officials of the former government, including a number of former cabinet ministers, returned to the country and resumed political activities without incident." Mayela's own testimony on her brother's alleged disappearance stated once that he left the house to attend a political rally and twice that he left to get something to eat. She has not shown that the terrible things the soldiers allegedly did in her house were a political reprisal rather than wanton violence during a civil war indiscriminately inflicted by soldiers upon the civilian population.

Since Mayela has failed to establish her right to asylum, necessarily she also has failed to satisfy the more stringent standards for withholding removal. *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). Her claim under the Convention Against Torture fails because she has not shown "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *see Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).

III

Mayela contends that the Board erred in using its summary-affirmance-without-opinion-single-member procedure in deciding her case.

Under 8 C.F.R. § 1003.1(e)(4), the Board is authorized to affirm without opinion an immigration judge's decision if it determines that "the decision under review was correct; that any errors made were harmless or nonmaterial, and that (A) [t]he issues on appeal are squarely controlled by . . . precedent . . . or (2) [t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." Assuming arguendo that an applicant such as Mayela may challenge the Board's decision to use its streamlined procedure -

which "remains an open question before this court," *Rreshpja*, 420 F.3d at 558 (quoting *Hassan v. Gonzales*, 403 F.3d 429, 437 (6th Cir. 2005)) - she would not prevail on this point. This case involves no novel issues, but only the application of settled principles to the particular facts. We cannot say that the Board erred in utilizing its streamlined procedure in deciding Mayela's appeal.

CONCLUSION

The immigration judge's decision (which the Board affirmed) that Mayela was not eligible for asylum, withholding of removal, or protection under the Convention Against Torture, is AFFIRMED.