Carlos Jose Murillo ROJAS, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

Juan Antonio CHANG, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

Juana Rosa ALVARADO–GARCIA and Jorge Ramon Duarte–Montoya, Petitioners,

v.

BOARD OF IMMIGRATION APPEALS R. Kevin McHugh, Immigration Judge Immigration and Naturalization Service, John B.Z. Caplinger, District Director, Respondents.

Nos. 90–4694, 90–4724, 90–4757.

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1991.

Donald J. Risser, New Orleans, La., for petitioner in Nos. 90–4694, 90–4724.

Richard Thornburgh, Atty. Gen., U.S. Dept. of Justice, William J. Howard, Robert Kendall, Jr., Asst. Dir., Richard M. Evans, Robert L. Bombough, Dir., Office of Immigration Lit., Francesca Isgro, David J. Kline, Washington, D.C., John B.Z. Caplinger, Dist. Dir., INS, New Orleans, La., for I.N.S.

Romualdo Gonzalez, Murray, Braden, Gonzalez & Richardson, New Orleans, La., for petitioners in No. 90–4757.

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:

The above three cases were consolidated for oral argument. Each Petitioner appeals from an order by the Board of Immigration Appeals denying them asylum and withholding of deportation. Because of the similarity in the law applied, one opinion shall address all three cases (and all four Petitioners). Finding the Board of Immigration Appeals did not abuse its discretion in denying these Petitioners' requests for asylum and withholding of deportation, we affirm.

## I. The Facts.

### Facts surrounding Rojas

Carlos Jose Murillo Rojas, a twenty-eight year old Nicaraguan citizen, concedes his deportability but seeks asylum. The Immigration and Naturalization Service ("INS") judge found, and the record fully supports, the facts that follow.

Petitioner claims asylum because he fears that if he returns to Nicaragua, he will be persecuted by the Sandinistas because he worked intermittently as a Red Cross volunteer in Nicaragua between 1979 and 1987. He says his life was threatened many times, but he has never been detained, interrogated, convicted, sentenced or imprisoned. As a Red Cross volunteer, he was available for first aid service for two weekends per month. He actually served 144 days, including 60 days as a lifeguard and 84 days on emergency ambulance duty.

As a volunteer, he took an oath of political neutrality. On two occasions, the Sandinista government denied Rojas and other Red Cross workers emergency access to injured demonstrators and threatened the volunteers with jail if they persisted.

He served in the Nicaraguan military for two years. Thereafter, allegedly his Red Cross service became known to the Sandinista government and an attempt was made to conscript him again. However, others were also conscripted a second time. He was threatened with imprisonment if he did not rejoin the military. Nevertheless, Nicaraguan authorities granted him a passport. The INS judge therefore denied Rojas' request for asylum and withholding.

With the burden upon Rojas, the Board found no basis in the record to support his contention that he had suffered past persecution sufficient to merit a grant of asylum. The Board also took administrative notice of the fact that the Sandinistas no longer control the Nicaraguan government and therefore Rojas has no reason to fear the return to his country now that a new government is in place. Failing to meet the burden for asylum, he would also fail the stricter clear probability standard re-

quired for withholding of deportation. Rojas appeals to this court for review of the above mentioned board actions and for an opportunity to reopen the record to introduce new evidence.

### Facts surrounding Chang

Juan Antonio Chang is a native and citizen of Nicaragua. He entered the United States illegally in 1984. In February 1987, the INS ordered Chang to show cause why he should not be deported for entering the United States without inspection. At his deportation hearing, Chang admitted that he was deportable, but he asked for a continuance to apply for asylum and withholding of deportation. *See* 8 U.S.C. §§ 1158 and 1253(h). The Immigration Judge granted a continuance.

In his application for asylum and withholding of deportation, Chang claimed that he was "deemed an enemy of the Revolution" for refusing to serve in the Sandanista militia. Chang testified at his deportation hearing that he was arrested, beaten and tortured for refusing to perform "vigilance duty," i.e., night patrol in his neighborhood. Chang further testified that all citizens of Nicaragua were expected to perform vigilance duty, and those who refused were subjected to the same treatment Chang received.

After his release from jail, Chang was fired from his job, and the Sandanista Defense Committee refused to issue him a card, a prerequisite to obtaining other employment. Chang remained in his home town of Corinto for two months after being fired, but he felt threatened. Chang fled to Managua, where he stayed with a cousin for seven months. Chang fled to the United States after obtaining a passport from his cousin.

The Immigration Judge denied Chang's application for asylum and withholding of deportation but granted Chang the right to depart from the United States voluntarily. The Immigration Judge found that Chang did not endure "persecution per se" and that Chang did not allege any specific facts showing that he would be persecuted on his return to Nicaragua. The judge concluded:

[I]t appears that [Chang] may have overreacted or did in fact overreact when he fled to his cousin's house and also fled to America.... [T]here is no justification to think that [Chang] would be persecuted nor would a reasonable person in his shoes fear persecution should he return to Nicaragua based upon the testimony that has been given in court and that furnished by the record of the proceedings.

On appeal, the Board of Immigration Appeals ("BIA" or "Board") affirmed, finding that Chang's fear of persecution was not related to one of the five grounds enumerated in § 208(a) of the Immigration and Nationality Act: race, religion, nationality, membership in a particular social group or political opinion. *See* 8 U.S.C. § 1101(a)(42). The BIA also took administrative notice that the Sandanistas no longer control Nicaragua's government after national elections held last year. Finally, the BIA denied Chang's asylum application on discretionary grounds. Assuming for argument's sake that Chang had been persecuted or had developed a well-founded fear of persecution, the BIA said it could not conclude that humanitarian considerations compel a grant of asylum based on past persecution. Chang appeals to this court.

### Facts surrounding Alvarado–Garcia and Duarte–Montoya

Juana Rosa Alvarado–Garcia and Jorge Ramon Duarte–Montoya, common law wife and husband, are natives and citizens of Nicaragua. They entered the United States illegally in 1984. On the same day, the INS ordered them to show cause why they should not be deported. Alvarado–Garcia and Duarte–Montoya both requested asylum, withholding of deportation and voluntary departure.

Alvarado–Garcia claimed that if she returned to Nicaragua, she would be persecuted by the Sandanistas. Her brother worked for a steamship company owned by former President Somoza, and her daughter, a secretary to the board of directors of a labor union, had refused to turn over

union files to the Sandanistas. Alvarado–Garcia's daughter left Nicaragua and was granted asylum in the United States. After that, the Sandanistas asked Alvarado–Garcia to hold a meeting of the Sandanista's neighborhood defense committee in her home. Alvarado–Garcia refused, and the Sandanistas cut off her food ration card.

Duarte–Montoya claimed that he would be persecuted by the Sandanistas if he returned to Nicaragua because various members of his family were involved in activities against the Sandanista government. Duarte–Montoya was twice interrogated at length about his brother, a member of an anti-Sandanista organization called "ORDEN." His brother has since been granted asylum in the United States. Duarte–Montoya testified that the Sandanistas hit him during one of the interrogations. Duarte–Montoya left Nicaragua after receiving another notice to report to the police station for interrogation.

The Immigration Judge denied asylum and withholding of deportation for both Alvarado–Garcia and Duarte–Montoya, but granted them the right to depart from the United States voluntarily. The judge found that the claims made by Alvarado–Garcia and Duarte–Montoya were "based primarily upon the activities of their relatives," and concluded that they had not established a well-founded fear of persecution should they return to Nicaragua.

On appeal, the Board of Immigration Appeals affirmed, finding that Alvarado–Garcia and Duarte–Montoya were not eligible for asylum or for withholding of deportation. Petitioners had not presented specific evidence of past persecution and had not shown that their fear of persecution was related to one of the five grounds enumerated in § 208(a) of the Immigration and Nationality Act: race, religion, nationality, membership in a particular social group or political opinion. *See* 8 U.S.C. § 1101(a)(42). In addition, the Board found that even if Alvarado–Garcia and Duarte–Montoya had been eligible for asylum, humanitarian considerations did not compel a grant of asylum on discretionary grounds. Finally, the Board found no basis for a

well-founded fear of persecution after taking administrative notice that the Sandanistas had lost control of Nicaragua's government in national elections held last year. Alvarado–Garcia and Duarte–Montoya appeal to this court.

## II. The Law.

██ The standard for determining if asylum should be granted is whether a reasonable person in the applicant's circumstances would fear persecution. *Guevara Flores v. Immigration and Naturalization Service*, 786 F.2d 1242 (5th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987). It is sufficient under this standard to show that persecution is a reasonable possibility. *Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In order to qualify for withholding of deportation, a clear probability of persecution must be shown. *Immigration and Naturalization Service v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). According to these standards, it is easier to qualify for asylum than for a withholding of deportation. *Cardoza–Fonseca*, 480 U.S. at 443, 107 S.Ct. at 1219.

██ We review the Board's factual findings to determine if they are supported by substantial evidence. 8 U.S.C. § 1105a(a)(4); *Zamora–Morel v. Immigration and Naturalization Service*, 905 F.2d 833, 838 (5th Cir.1990). The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and be substantially reasonable. *Diaz–Escobar v. Immigration and Naturalization Service*, 782 F.2d 1488, 1493 (9th Cir.1986). We accord deference to the Board's interpretation of immigration statutes unless there are compelling indications that the Board's interpretation is incorrect. *Campos–Guardado v. Immigration and Naturalization Service*, 809 F.2d 285, 289 (5th Cir.), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). The records before us fully support the Board's conclusions that Rojas, Alvarado–Garcia and Duarte–Montoya are not eli-

gible for asylum because their fears are neither well founded nor reasonable.

Chang may be eligible for asylum, but he has not shown he is entitled to asylum as a matter of discretion. The Board stated, "we cannot conclude from our independent review of the record and the factual circumstances discussed above that humanitarian considerations compel a grant of asylum based on past persecution." "The Attorney General's ultimate decision whether to grant or deny a refugee asylum ... must be upheld 'absent a showing that such action was arbitrary, capricious, or an abuse of discretion.'" *Zamora–Morel*, 905 F.2d at 838, quoting *Young v. I.N.S.*, 759 F.2d 450, 455 n. 6 (5th Cir.1985), *cert. denied*, 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362. The Board found no facts in the respective records warranting the grant of asylum, and Chang does not show how the Attorney General abused his discretion.

Since an even heavier burden is upon a party seeking withholding of deportation, *Cardoza–Fonseca*, 480 U.S. at 443, 107 S.Ct. at 1219, and the records support the denials of asylum for Rojas, Alvarado–Garcia and Duarte–Montoya, we need not further address this issue as to those three petitioners. As for Chang, even if he satisfied his burden of proof for eligibility for asylum (i.e., a well founded fear of prosecution), he did not produce enough evidence to show the clear probability of persecution required for withholding of deportation.

All four Petitioners complain about the Board taking administrative notice of the change of governments in Nicaragua. Because we have concluded these cases were decided on sufficient records, we need not address the propriety of the Board taking administrative notice.[1]

 As an alternative to their other claims, Petitioners ask that we remand each matter to the Board to take additional evidence of post-election reports concerning

the role of the Sandinistas in the present Nicaraguan government. To justify remand, a Petitioner must show that the proffered evidence is material and that there are reasonable grounds for failure to produce it originally before the agency. There have been no such showings in the cases before us.

Accordingly, the decisions of the Board of Immigration Appeals to deny asylum and withholding of deportation for Rojas, Alvarado–Garcia, Duarte–Montoya and Chang are AFFIRMED.

---

**1.** Notice can be taken only of facts with a generally known and accepted quality. *Spillway Marina, Inc. v. United States,* 445 F.2d 876 (10th Cir.1971). In these situations, the Board should look to relatively impeccable sources. One comes to mind instantly, the U.S. State Department; it is the most appropriate and perhaps the best resource the Board could look to in order to obtain information on political situations in foreign nations.