# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1861

_____

| | | |
|---|---|---|
| Jose Cigaran and Lucia Requeno-de Cigaran, | * * * | |
| Petitioners, | * * | |
| | * | Petition for Review of an Order of the |
| v. | * | Immigration and Naturalization Service. |
| | * | |
| Michael Heston, District Director, Immigration and Naturalization Service, and Janet Reno, Attorney General of the United States of America, | * * * * * | |
| Respondents. | * | |

_____

Submitted:  September 22, 1998

Filed: October 30, 1998

_____

Before HANSEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Jose Cigaran and Lucia Requeno-de Cigaran, his wife, are natives of El Salvador.  During his service in the El Salvadoran military and national guard, Mr. Cigaran became acquainted with the activities of a military unit known as

Section II, members of which took opponents of the government from their homes for interrogation and, sometimes, "elimination." Due in part to his disapproval of these actions, Mr. Cigaran left the military and took a position as a security guard at the University of Central America in San Salvador, an institution that was run by Jesuits.

During the course of his employment at the university, Mr. Cigaran encountered Section II members on three separate occasions. On the first occasion, Section II members who knew Mr. Cigaran from his national guard days attempted to enter the campus, but Mr. Cigaran refused to allow them to do so. They accused him of leftist sympathies and threatened that he would disappear if he did not help them. Approximately two months later they returned, threatening that Mr. Cigaran would die if he did not cooperate. He refused them again. Shortly after this incident, six Jesuit priests, their housekeeper, and her daughter were all brutally murdered at the university. The Section II members returned days later, again accusing Mr. Cigaran of leftist sympathies and threatening him. One week later, Mr. Cigaran quit his job and repaired to his parents' home in Lourdes, where he stayed for nearly a year. He and his wife then fled to the United States through Mexico, entering without inspection in 1991.

Mr. Cigaran applied for political asylum, and his wife joined in his application, relying on him as principal petitioner. The immigration judge denied the application. The Board of Immigration Appeals (BIA) dismissed Mr. Cigaran's subsequent appeal, holding that he had not suffered past persecution and did not have a well-founded fear of future persecution, and was therefore not eligible for asylum. We affirm the decision of the BIA.

I.

An alien is eligible for asylum if he or she is outside his or her own country and "is unable ... to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion,

nationality, membership in a particular social group, or political opinion." See 8 U.S.C. § 1101(a)(42)(A). In the usual case, the critical inquiry is whether the applicant has a well-founded fear of future persecution upon return to his or her country. To establish such a fear, an applicant must demonstrate a fear that is both subjectively genuine and objectively reasonable. See, e.g., Immigration and Naturalization Service v. Cardozo-Fonseca, 480 U.S. 421, 430-31 (1987), and Hamhezi v. Immigration and Naturalization Service, 64 F.3d 1240, 1242 (8th Cir. 1995); see also 8 C.F.R. § 208.13(b)(2).

The applicant is entitled to a presumption of a well-founded fear of future persecution if past persecution is established, and the burden then shifts to the Immigration and Naturalization Service to show by a preponderance of the evidence that "conditions in the applicant's country ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return." See 8 C.F.R. § 208.13(b)(1)(i). Even if the INS carries this burden, "humanitarian asylum" may be granted based on past persecution alone if that persecution was particularly atrocious. See, e.g., Asani v. Immigration and Naturalization Service, 154 F.3d 719, _____, 1998 WL 560265, at *2 (7th Cir. 1998), and Matter of Chen, 20 I. and N. Dec. 16, 19 (B.I.A. 1989); see also 8 C.F.R. § 208.13(b)(1)(ii).

## II.

Mr. Cigaran first contends that the BIA should have considered the cumulative impact of the relevant incidents in the record to determine whether they rose to the level of persecution, rather than considering them separately. See, e.g., Singh v. Immigration and Naturalization Service, 134 F.3d 962, 967 (9th Cir. 1998). If the BIA had done so, Mr. Cigaran argues, it would have to have made a finding of past persecution, which would then have created a presumption of a well-founded fear of future persecution, thereby shifting the burden to the INS to prove by a preponderance of the evidence that Mr. Cigaran's fear was not well-founded. Mr. Cigaran also contends that the INS did not meet this burden.

Even if we assume that the law requires the kind of analysis that Mr. Cigaran argues for, and that such an analysis would necessarily have led to a finding of past persecution and a shifting of the burden of proof to the INS, Mr. Cigaran's appeal would still fail. The shifting of an evidentiary burden of preponderance is of practical consequence only in the rare event of an evidentiary tie: If the evidence that the parties present balances out perfectly, the party bearing the burden loses. In this case, therefore, the BIA's refusal to shift the burden to the INS injured Mr. Cigaran's application only if the evidence was in equipoise, causing Mr. Cigaran to lose because he had the burden of proof. There is no indication, however, that the BIA thought that that was the case, nor can we say that, as a matter of law, the evidence was in equipoise. In fact, the record makes it clear, in our view, that the BIA believed that the preponderance of the evidence established that Mr. Cigaran's fear of future persecution was not objectively reasonable, and therefore not well-founded. It is also clear to us, as we discuss below, that the record supports that belief.

We review the BIA's findings on this matter under a "substantial evidence" standard, and must affirm where there is evidence sufficient for a reasonable fact finder to conclude that the alien in question lacked a well-founded fear of persecution. See, e.g., Immigration and Naturalization Service v. Elias-Zacarias, 502 U.S. 478, 481 (1992), and Ghasemimehr v. Immigration and Naturalization Service, 7 F.3d 1389, 1390 (8th Cir. 1993) (per curiam).

Although Mr. Cigaran presented evidence that dangerous paramilitary gangs still exist in El Salvador, there was significant evidence tending to show that the political situation in El Salvador has changed in ways that render Mr. Cigaran's fear unreasonable. Evidence contained in documents produced by the United States Department of State for the Senate Committee on Foreign Relations and the House of Representatives Committee on Foreign Affairs indicated that political violence in El Salvador has subsided substantially in the nine years since Mr. Cigaran was threatened by the death squads. The United States Department of State profile of asylum claims

-4-

and country conditions for El Salvador for October, 1995, reported "no confirmed cases of politically motivated killings" in El Salvador in 1994 and no verified cases of "forced disappearance" in over two years. The evidence that Mr. Cigaran advanced may have tended to show that El Salvador is a dangerous place generally, but there was also sufficient evidence for a reasonable fact finder to conclude that his fear of future persecution on political grounds was not reasonable.

### III.

Finally, Mr. Cigaran contends that he should have been granted asylum based on past persecution alone. "Humanitarian asylum" has been reserved for those cases in which the past persecution suffered has been particularly atrocious. See, e.g., Rojas v. Immigration and Naturalization Service, 937 F.2d 186, 188 (5th Cir. 1991) (denial of humanitarian asylum upheld although applicant was arrested, beaten, fired, and denied other employment), and Matter of Chen, 20 I. and N. Dec. at 21, (humanitarian asylum granted where applicant was tortured, harassed, confined, and denied food and medical attention). The incidents that Mr. Cigaran cites do not rise to the required level of atrocity. In fact, he was only threatened; no one, as far as the record shows, ever laid a hand on him. The BIA did not therefore err in denying him asylum based solely on past persecution.

### IV.

For the reasons stated, we affirm the decision of the BIA.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-5-