Martin **LUCIANO–VINCENTE,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 84–4739
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 9, 1986.

Orleans, La., Ronald Chandler, Dist. Dir., I.N.S., Dallas, Tex., for respondent.

Before CLARK, Chief Judge, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

## PER CURIAM:

Petitioner challenges the denial of his application for suspension of deportation by the Immigration and Naturalization Service (INS). Because the immigration judge and the Board of Immigration Appeals (the Board) considered each factor pertinent to petitioner's claim of extreme hardship that was supported by evidence of record, we affirm.

Martin Luciano-Vincente is a thirty-four year old native and citizen of Mexico. He was admitted to the United States as a nonimmigrant visitor for a period not to exceed six months on October 1, 1975. He remained in the United States after his visa expired, and sent for his wife and two children, who are also Mexican citizens. The Luciano's third child, Annette, was born in Dallas, Texas, and is a citizen of the United States. She is now ten years old and has completed the third grade in a Dallas school. Luciano and his wife have been employed by several Dallas hotels.

On June 20, 1977, the INS issued the Lucianos letters informing them that as a result of a United States district court injunction, no action would be taken on their case at that time and they could remain in the United States without threat of deportation until further notice. Luciano subsequently purchased a home in Dallas. This injunction was vacated late in 1981.

The INS instituted deportation proceedings against Luciano via a show cause order on November 8, 1983. At a hearing before an immigration judge, Luciano conceded deportability, but applied for suspension of deportation. He claimed that deportation would result in extreme hardship to himself and to Annette.

Eugenio Cazorla, Brian K. Bates, Dallas, Tex., for petitioner.

Robert L. Bombough, Director, Office of Immigration, Madelyn E. Johnson, Litigation, Civil Div., Linda S. Wendtland, Allen W. Hausman, Asst. Dir., Washington, D.C., David H. Lambert, Dist. Dir., I.N.S., New

The hearing was adjourned to allow further investigation and reconvened six months later. Luciano testified as to his claims of extreme hardship at that time. At the close of the evidence, the immigration judge ruled orally that Luciano was deportable and denied his application for suspension of deportation on the ground that he had not demonstrated the required extreme hardship.

Luciano filed a notice of appeal with the Board, but never submitted a brief or other documents in support of that appeal. The Board dismissed his appeal on October 2, 1985. On appeal to this court, Luciano contends that the Board failed to give meaningful consideration to all factors pertinent to his claim of extreme hardship.

Our authority to review final orders of deportation lies in section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a).

To be eligible for suspension of deportation, an alien must demonstrate continuous physical presence in the United States for at least seven years immediately prior to the application for suspension, good moral character during that time and at the time of application, and that "extreme hardship" to himself or to a relative who is a citizen or lawful permanent resident of the United States would result from his deportation. *Ramos v. INS*, 695 F.2d 181, 184 (5th Cir.1983); 8 U.S.C. § 1254(a)(1). On appeal of an INS determination of no extreme hardship, our review is limited to ascertaining whether the Board fully considered all factors in evidence relevant to that decision. *Sanchez v. INS*, 755 F.2d 1158, 1160–61 (5th Cir.1985); *Zamora-Garcia v. INS*, 737 F.2d 488, 490–91 (5th Cir.1984); *Ramos*, 695 F.2d at 188–90. The Board must consider these factors individually and collectively. *Sanchez*, 755 F.2d at 1161 (citing *Ramos*, 695 F.2d at 186 n. 12). The Board's failure or refusal to consider a pertinent factor may constitute an abuse of discretion, but we may not determine the weight it should accord each factor. *Zamora-Garcia*, 737 F.2d at 493.

Luciano claims that the INS did not give full consideration to his claims that he has established financial and social roots in the United States, that he will not be able to find employment and support his family in Mexico, and that deportation will deprive his child who is a United States citizen of educational, cultural, and financial advantages available only to her in the United States. Contrary to this assertion, however, the Board addressed each of these contentions in its opinion.

The Board noted that Annette is a citizen of the United States, that one of Luciano's brothers is a lawful permanent resident of the United States while his parents and other brother reside in Mexico, that Luciano has purchased a home in Dallas, and that Luciano claimed he would not be able to support his family in Mexico. The Board held that the loss of a United States job and home did not constitute the requisite extreme hardship. Furthermore, Luciano's arguments were held to be weak because he lacked personal knowledge of the current standards of living in Mexico and because he had been employed as an elementary school teacher there prior to his coming to the United States. The Board stated that "[t]his past employment in a professional capacity will aid him in his search for employment in Mexico."

Furthermore, the Board stated that the advantages Annette would lose if she also moved to Mexico did not constitute extreme hardship. The Board noted that the members of Luciano's family are in good health, speak fluent Spanish, have a moderate amount of savings, and have relatives living in Mexico who may provide moral and financial support for them and help Luciano find employment. The Board stated it had considered these factors individually and collectively, and concluded that Luciano had not demonstrated the requisite extreme hardship.

The Board "has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to

perceive that it has heard and thought and not merely reacted." *Osuchukwu v. INS,* 744 F.2d 1136, 1142–43 (5th Cir.1984) (reviewing hardship determination under 8 U.S.C. § 1182(h) consistently with *Ramos* and *Zamora-Garcia* ). The Board's opinion indicates sufficient consideration of each of Luciano's contentions.

Luciano also complains that the immigration judge used an improper "floodgates argument" and analyzed his case only in comparison to other suspension of deportation cases. The Board, however, reviewed the case under an individual standard, stating that "[d]etermining whether or not this level of hardship exists depends upon an analysis of all the facts and circumstances peculiar to each case." This argument is meritless.

■ Finally, Luciano contends that he remained in the United States, relying in good faith on the letter he received from the INS regarding a federal district court injunction that precluded the deportation of aliens with certain visa priority dates. This injunction was issued in *Silva v. Levi,* No. 76–C–4268 (N.D.Ill. April 1, 1977). INS letters giving notice of the injunction are commonly referred to as *Silva* letters. Luciano claims that his reliance on the *Silva* letter is a factor the Board erroneously failed to consider in ruling on his application for suspension of deportation.

Such reliance, however, is not an appropriate factor for consideration. When the INS issued the letter, Luciano's nonimmigrant visa had expired and he had been in the United States illegally for almost fourteen months. He had sent for his wife and two children, who were also in the United States illegally.

Furthermore, the letter did not state that Luciano could remain in the United States permanently. The court's order only relieved him from the threat of deportation while the injunction was in force. The injunction was issued to allow the reallocation of approximately 145,000 visa numbers. *See Silva v. Bell,* 605 F.2d 978 (7th Cir.1979) (determining method of reallocation). All of the numbers were reallocated

before Luciano's priority date was reached. When this reallocation was completed late in 1981, the injunction was vacated. The INS was then free to institute deportation proceedings against Luciano.

Luciano's initial decision to remain in the United States illegally was not based on this letter. The letter merely postponed his deportation. *See Marquez-Medina v. INS,* 765 F.2d 673, 675 n. 2 (7th Cir.1985) ("It is certainly clear that the injunction was not intended to confer any benefit other than postponing deportation."); *cf. Bagues-Valles v. INS,* 779 F.2d 483, 484–85 (9th Cir.1985) (*Silva* letters adequately informed appellants of and did not misrepresent the limited protection of the *Silva* injunction; appellants' claim that they relied on the *Silva* letters in believing they could leave the United States without interrupting the "continuous physical presence" requirement for suspension of deportation was not valid). Any reliance Luciano may have placed on the letter was not an appropriate factor for the INS to consider in ruling on his application.

■ We do not have the authority to grant Luciano's alternative request for remand to the INS for a determination on deferred action status. We cannot require a determination which we have no power to review. *See Wall v. INS,* 722 F.2d 1442, 1443–44 (9th Cir.1984) (court had no jurisdiction under 8 U.S.C. § 1105a(a) to review INS district director's independent denial of deferred action status); *Fleurinor v. INS,* 585 F.2d 129, 135–36 (5th Cir.1978) (court could not remand denial of asylum petition where court, at that time, had no power to review such determinations). The judgment appealed from is

AFFIRMED.