United States Court of Appeals,

Fifth Circuit.

No. 90–4792.

Benedictor DIAZ–RESENDEZ, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

May 12, 1992.

Petition for Review of an Order of the Immigration and Naturalization Service.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and WINGATE,[*] District Judge.

POLITZ, Chief Judge:

Benedictor Diaz–Resendez petitions for review of an order of the Board of Immigration Appeals denying discretionary relief from deportation under 8 U.S.C. § 1182(c). Concluding that the Board's decision is arbitrary and beyond the pale of its discretion we grant review, vacate and remand.

Background

Diaz–Resendez was admitted to the United States as a lawful resident when he was 17 years old. He has been in continuous lawful-resident status for 37 years, has been married to a United States citizen for 29 years, and they are the parents of six children, all born in the United States. Two of the children are adults and are married, living on their own in Roma, Texas where the family resides. Four of the children still reside in the home, one of whom has special education needs as a result of a head injury sustained in a bicycle accident. That child attends private night school. A second child is attending public high school and the third is taking GED courses. The fourth child is currently employed. Diaz–Resendez is the primary source of income for his family and has a consistent history of employment. His earnings have averaged around $5000 a year from his various work as a carpenter, construction worker, and field worker. The exception is one year in which his earnings were only $375, a time when Diaz–Resendez was forced to apply for assistance in the form

[*]District Judge of the Southern District of Mississippi, sitting by designation.

of food stamps. The health of this 54–year–old is reasonably good although he receives treatment for a prostate problem. His wife, however, has a progressive and incurable medical condition causing spinal column disintegration.

A disastrous event occurred in the life of Diaz–Resendez on October 28, 1985 when the INS arrested him at a checkpoint and approximately 21 pounds of marihuana was found secreted in the car he was driving. Diaz–Resendez pled guilty to possession of marihuana with intent to distribute. He explained that he did this criminal act because of desperation caused by the economic straits he had encountered and his inability to provide for his family, something he had done with pride all of his married life. He was sentenced to imprisonment for three years followed by a special parole term of five years. Of particular note, and of substantial significance, the very experienced trial judge suspended all but four months of the jail sentence. The only other brush with the law Diaz–Resendez had during his 37 years of lawful permanent residence in the United States was a DWI charge in 1983, immediately following which he quit drinking alcoholic beverages.

Deportation proceedings were triggered by the drug offense. Pleading that he would never be involved in such conduct again, Diaz–Resendez conceded that he was deportable under 8 U.S.C. § 1251(a)(11), which calls for the deportation of persons who violate our drug laws, but requested, based on all of the relevant circumstances, that he be granted a waiver of deportation under 8 U.S.C. § 1182(c).[1]

A deportation hearing was conducted by an Immigration Judge. Diaz–Resendez testified, as did his wife who stated, *inter alia,* that she and the children would not move to Mexico and that the deportation of her husband would result in a separation of their close-knit family. In addition,

---

[1]Section 212(c) of the Act, 8 U.S.C. § 1182(c), has been interpreted to provide for discretionary relief from deportation for permanent resident aliens who have accrued more than seven consecutive years of lawful, unrelinquished domicile in the United States. *See e.g., Mantell v. INS,* 798 F.2d 124, 125 n. 2 (5th Cir.1986); *Tapia–Acuna v. INS,* 640 F.2d 223 (9th Cir.1981); *Francis v. INS,* 532 F.2d 268 (2d Cir.1976).

documentary evidence was introduced in an effort to buttress the claim that Diaz–Resendez was entitled to relief under section 212(c). That evidence included proof of employment and earnings, a favorable letter from the probation officer, and letters of recommendation urging favorable consideration of his petition. The IJ denied relief and ordered deportation to Mexico. Diaz–Resendez appealed to the Board which refused relief. He timely petitioned this court for review of the Board's decision.

## Standard of Review

A permanent resident alien requesting discretionary relief from deportation under section 212(c) bears the burden of demonstrating that his application merits favorable consideration. *Blackwood v. INS,* 803 F.2d 1165 (11th Cir.1986). Neither the statute nor applicable regulation contain provisions specifying the circumstances under which such discretion should be exercised. *See* 8 U.S.C. § 1182(c); 8 C.F.R. § 213.3 (1990). Typically, deference is given to the Board's interpretation of the Act unless there are persuasive indicators that the Board erred. *Zamora–Morel v. INS,* 905 F.2d 833, 838 n. 2 (5th Cir.1990).

The Board's denial of an applicant's petition for relief under section 212(c) is reviewed for abuse of discretion. *Foti v. INS,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *Bal v. Moyer,* 883 F.2d 45 (7th Cir.1989). Such denial will be upheld unless it is arbitrary, irrational, or contrary to law. *Zamora–Morel,* 905 F.2d at 838; *Blackwood,* 803 F.2d at 1168; *Daniel v. INS,* 528 F.2d 1278 (5th Cir.1976). When determining whether the Board's action was arbitrary, irrational, or not in accordance with the law, we "engage in a substantial inquiry, ... a thorough, probing, in-depth review of [the] discretionary agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971); *Acadian Gas Pipeline System v. FERC,* 878 F.2d 865 (5th Cir.1989) (reviewing court does not rubberstamp agency decisions; instead, review must be searching and careful).

Under this standard, the Board's decision may be reversed as an abuse of discretion when it is made without rational explanation, or inexplicably departs from established policies. *Martinez–Montoya v. INS,* 904 F.2d 1018 (5th Cir.1990) (reversing Legalization Appeal Unit order because a deferred adjudication under Texas law was not a "conviction" under BIA precedent); *Graphic Communications Int. Union, Local 554 v. Salem–Gravure Div. of World Color Press, Inc.,* 843 F.2d 1490, 1493 (D.C.Cir.1988) *cert. denied sub nom. World Color Press, Inc. v. Dole,* 489 U.S. 1011, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989) ("Agency decisions that depart from established precedent without a reasoned explanation will be vacated as arbitrary and capricious."). Further, a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors extant. *Luciano–Vincente v. INS,* 786 F.2d 706 (5th Cir.1986) (the Board's failure to consider a pertinent factor constitutes abuse of discretion); *Mattis v. INS,* 774 F.2d 965 (9th Cir.1985) (BIA discretionary denials must demonstrate that the BIA weighed both favorable and unfavorable factors) (citing *De La Luz v. INS,* 713 F.2d 545 (9th Cir.1983)); *Zamora–Garcia v. INS,* 737 F.2d 488, 490–91 (5th Cir.1984) (INS must "actually consider" the facts, "meaningfully address" each claim of hardship, and give "reasons for denying relief that reflect full consideration of the evidence.") (citing *Ramos v. INS,* 695 F.2d 181 (5th Cir.1983)).

Findings of fact supporting the Board's exercise of discretion, however, are reviewed merely to determine whether they are supported by substantial evidence. *Zamora–Morel,* 905 F.2d at 838 (citing *Young v. INS,* 759 F.2d 450, 455–56 n. 6 (5th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985)).

Applicable Law

In Matter of Marin, 16 I & N Dec. 581 (BIA 1978), the Board established a balancing test for determining whether an alien seeking relief under section 212(c) merits a favorable exercise of discretion.

The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.... Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record, and if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.... Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Id.* at 584.

The Board also explained that "[a]s the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may involve unusual or outstanding equities." *Id.* at 585. Applicants for discretionary relief who have been convicted of serious drug offenses must show "unusual or outstanding equities." *Id.* at 586 n. 4; Matter of Edwards, Interim Decision 3134 (BIA May 2, 1990); Matter of Buscemi, Interim Decision 3058 (April 13, 1988). Although it is not an absolute prerequisite, an applicant with a criminal record will ordinarily be required to make a showing of rehabilitation before section 212(c) relief will be granted.

Analysis

Diaz–Resendez contends that the Board erred in dismissing his appeal. His issues for review reduce to four; specifically, the Board: (1) incorrectly weighed his positive equities; (2) acted inconsistently in finding that he failed to demonstrate unusual or outstanding equities; (3) failed to consider relevant positive factors; and (4) erred in its factual finding that he failed to establish proof of genuine rehabilitation.

*Improper Weighing of the Equities*

The Board found that Diaz–Resendez's equities, while substantial, did not rise to the level of being unusual or outstanding. Diaz–Resendez argues that the Board improperly balanced the positive and negative factors outlined in Marin. He asserts that Marin and its progeny require that the positive and negative aspects of a case be separately evaluated—that a determination is to be made whether the favorable equities rise to the level of unusual and outstanding prior to balancing them against the negative factors. Diaz–Resendez argues that the Board erred because it counted the absence of several positive factors as negative factors and subtracted them from the positive factors before determining that the remainder did not constitute unusual or outstanding equities.

Our review of the record convinces us that the Board did not properly weigh serious positive equities, some of which are detailed above and some of which are discussed further herein.

*Inconsistent Treatment of Similar Cases*

Diaz–Resendez next contends that the Board acted arbitrarily by holding that he failed to demonstrate unusual or outstanding equities, although the Board had reached a contrary conclusion on much weaker facts in Buscemi. In Buscemi the Board found that the alien had demonstrated unusual or outstanding equities by the fact that his immediate family—parents and four siblings—all resided in the United States, that he had helped to support the family financially (although they were economically self-supporting without his contributions) and as a father figure, that he remained close with his family who would suffer emotional hardship if he were deported, that he had resided in the United States for 17 years and that such residence began at an early age, that he had a history of gainful employment, and that he was forced to grow up under difficult circumstances. Buscemi was a 26–year–old single man with no dependents. The Buscemi court considered Buscemi's 17 years of residence in this country, beginning at the age of nine, to be a particularly outstanding equity.[2]

---

[2]It is also interesting to note that the two separate opinions in Edwards identified both 25 and 20 years of residency as ordinarily sufficient to constitute an outstanding equity. Edwards, at 13 (Morris, Board Member, concurring); at 15 (Heilman, Board Member, concurring and dissenting).

The equities in the case at bar readily exceed those in Buscemi. These include petitioner's age; his 37 years in the United States; 29 years of marriage; the fathering of six citizen children, four of whom still reside with him and three of whom, including one with a brain-damage injury, are fully dependent on him; and a sick wife. The characterization in the letters of recommendation of Diaz–Resendez as a "hardworking family man and provider" and his clear criminal record for 37 years other than the sole DWI charge which ended his drinking of alcoholic beverages, factor heavily in the equity-weighing equation.

The Board offered no explanation for disparate treatment of these two factually similar cases, even though the dissenting member of the panel noted, "in Matter of Buscemi, we found equities inferior to those of [Diaz–Resendez] to be outstanding [citation omitted]." "The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." *Israel v. INS,* 785 F.2d 738, 740 (9th Cir.1986). *See also, Martinez–Montoya,* 904 F.2d at 1023; *Graphic Communications,* 843 F.2d at 1493.

*Failure to Consider Positive Factors*

Diaz–Resendez also contends that the Board failed to consider some of his favorable equities when deciding whether his equities rose to the level of unusual or outstanding. He contends that the Board overlooked factors including the imminent breakup of his marriage if he were deported, the fact that his children would be left fatherless, and the severe economic hardship that the family would incur.

The Board considered some but not all of the relevant factors. The Board must do more than just refer to relevant factors in passing. We previously have held in the context of 8 U.S.C. § 1254(a)(1) discretionary deportation cases, that the Attorney General or his delegates "must *actually consider* "the facts and circumstances respecting each petitioner's claim of extreme hardship.' " *Zamora–Garcia,* 737 F.2d at 491 (citations omitted) (emphasis in original). Similarly, we have held

that "[t]he Board's decision must reflect that it has meaningfully addressed and reached a reasoned conclusion on the alien's specific assertions of hardship that are based on evidence." *Ramos v. INS,* 695 F.2d 181, 188 (5th Cir.1983). Although the Board has no duty to write extensively on every issue, the record herein does not reflect that the Board actually considered or meaningfully addressed Diaz–Resendez' assertions of hardship.

*Rehabilitation*

We find that the treatment accorded the issue of rehabilitation falls below the warranted threshold. Although the Board's review covered some of the oversights by the IJ, the totality of Diaz–Resendez' 54 years and his performance after his arrest are relevant. We are not convinced that these were properly weighed. Apparently the Board inappropriately evaluated the matter because it was "troubled ... that [Diaz–Resendez'] testimony did not contain direct statements of remorse." We are of the view that remorse is demonstrated in many ways, some being more forceful than facile words. Although the Board has "no duty to write an exegesis on every contention," *Osuchukwu v. INS,* 744 F.2d 1136, 1142 (5th Cir.1984), we are not convinced that it actually considered the positive factors. Diaz–Resendez did not expressly state his remorse (he was never asked that direct question), but he testified that he would not do it again. Further, the dissenting Board member noted that the Board

> fail[ed] to consider [Diaz–Resendez'] post-conviction behavior. At the time of the hearing, the respondent had successfully completed nearly all of his 3 years of probation and had been free of criminal activity during that period. Further, he submitted a letter from his probation officer supporting his progress during probation. Moreover, the record reflects that this is the respondent's only criminal offense, which was contrary to the rest of his lifestyle, as evidence[d] by his family life and satisfactory record of employment.

We remain unpersuaded that the Board "actually consider[ed]" and "meaningfully addressed" all of the factors regarding rehabilitation. *Zamora–Garcia,* 737 F.2d at 490–91. For that reason, we find the Board's treatment of the issue of rehabilitation to be arbitrary and an abuse of discretion.

Conclusion

The Board abused its discretion by inexplicably departing from established precedent and failing to actually consider and meaningfully address the positive equities and favorable evidence when reaching its decision.

Diaz–Resendez committed a serious crime—possessing marihuana with the intent to distribute. For this crime he was punished, serving time in jail and on probation. As a result of his conviction he is also subject to deportation, 8 U.S.C. § 1251(a)(11). Congress, however, has enacted a remedial statute that grants a waiver of excludability to a broad range of otherwise inadmissible aliens, including those who have been convicted of crimes involving controlled substances, 8 U.S.C. § 1182(c). The IJ is to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." Marin, at 584.

Having reviewed the entire record in the context of the existing law, we conclude that the petition of Diaz–Resendez for section 212(c) relief has not been accorded the treatment to which it is entitled.

The petition for review is GRANTED; the decision of the Board is VACATED, and the matter is REMANDED to the Board for reconsideration consistent herewith.