United States Court of Appeals,

Fifth Circuit.

No. 91–4818.

Juan Jose VILLARREAL–SAN MIGUEL, Petitioner,

v.

IMMIGRATION and NATURALIZATION SERVICE, Respondent.

Oct. 21, 1992.

Petition for Review of an Order of the Immigration and Naturalization Service.

Before JONES and WIENER, Circuit Judges, and LITTLE, District Judge.[*]*

LITTLE, District Judge:

Juan Jose Villaral–San Miguel petitions for reversal of an order of the Board of Immigration Appeals. The Board reversed an order of the immigration judge and ordered petitioner's deportation. Concluding that the Board's determination was not an abuse of discretion, we affirm.


BACKGROUND

Villarreal, a Mexican national, has been legally living in the United States since 1973. He has been residing for the past several years in Brownsville, Texas in the company of his wife and two children, all of whom are U.S. citizens. During this time, the appellant has continued to work as a licensed insurance agent with clients on both sides of the Rio Grande. In 1985, Villarreal was paid $4,000.00 by an acquaintance to drive a car to a specific location in Brownsville, Texas. When he arrived at the destination, he was arrested by federal agents. The car cargo was nearly 100 pounds of marijuana. Villarreal pleaded guilty to the charge of intent to distribute the marijuana and, as a result of this conviction, subjected himself to the provisions of section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11). Generally, this provision allows the Attorney General to deport an alien who has been convicted of a violation of any law of the United States relating to a controlled substance. Under section 212(c) of the Immigration and Nationality Act, the respective

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

deportee may apply for a waiver of the sanction of deportation.  8 U.S.C. § 1182(c).  Villarreal availed himself of this provision and caused a deportation hearing to be conducted before an immigration judge.

At that hearing, Villarreal's documentary evidence and testimony was augmented by that of his wife, children, a neighbor, and a physician.  The testimony of consequence was categorized by the immigration judge as being either negative or positive.  The negative testimony included Villarreal's conviction for possession with intent to distribute 100 pounds of marijuana.  A microscopic examination of the conviction revealed that Villarreal knew the instigator of the plan to be a marijuana dealer and that he had requested Villarreal's assistance in the marijuana transportation business. Villarreal's other negatives, but of lesser weight, included:  a DWI conviction;  receipt of a ticket for a speeding violation;  an arrest for larceny that antedated the marijuana matter by approximately 25 years;  the falsification of records to assist his child's entry into a school not otherwise available to her;  and his unsubstantiated assertion that he wasn't required to file U.S. income tax returns.  On the brighter side of the ledger, the immigration judge mentioned the following.  Villarreal has lived in this country for over 16 years, but he did not enter as a young child.  Nor did he enter legally.  Villarreal is married to a former Mexican citizen, who is now a naturalized citizen, and his two children are U.S. citizens.  One is in school and the other is not.  Even after Villarreal's conviction, he and his wife went forward with a plan to build a house in the United States, the funds for which were acquired by them when they sold a condominium that had been donated to Mrs. Villarreal by her father.

The immigration judge found that a deportation would work a hardship on the Villarreal family.  Villarreal, post conviction, has a good job working as a supervisor for his father-in-law in a freight-forwarding business with export-import overtones located in the United States.  The family was willing to relocate to Matamoros, Mexico, a place of economic benefit, without suffering devastating emotional hardship.

The immigration judge, citing "outstanding equities" in favor of Villarreal's rehabilitation, granted the petition for avoidance of deportation. Of particular importance was Mr. Villarreal's testimony that he regretted his mistake, recognized the hardship and embarrassment experienced by his family, and refused to succumb to future similar temptations.

The Immigration and Nationalization Service appealed to the Board of Immigration Appeals. The Board sustained the appeal and reversed the immigration judge. The Board found that deportability had been established by clear, unequivocal, and convincing evidence as required by *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). According to the Board, the controlled substance conviction is a serious adverse factor that compels a showing of unusual or outstanding equities to warrant a grant of relief. Villarreal's evidence supporting nondeportation did not rise to the level of unusual and outstanding equities. Villarreal could find post deportation employment of consequence in Mexico. The trauma of a divided family would be lessened as Mrs. Villarreal and children would join Mr. Villarreal in Mexico. Finally, the crime was a serious one. Villarreal's explanation of his involvement was bizarre; and his understanding of the social impact of the crime was lacking. Rehabilitation has not been clearly demonstrated. The Board was under-whelmed with the Villarreals' falsification of records to allow their daughter to attend a school of her choice. On balance, the Board did not find that deportation should be avoided. Villarreal timely petitioned this court for review of the Board's decision.

## STANDARD OF REVIEW

The petitioner bears the burden of proving that the application for relief deserves a favorable determination. The Board's denial of a petition for relief from deportation is reviewed for abuse of discretion. *Foti v. INS,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *Diaz–Resendez v. INS,* 960 F.2d 493 (5th Cir.1992). The treatment of a Board's decision to deny relief by this court has been recently reviewed:

Such denial will be upheld unless it is arbitrary, irrational, or contrary to law. When determining whether the Board's action was arbitrary, irrational, or not in accordance with the law, we "engage in a substantial inquiry, ... a thorough, probing, in depth review of [the] discretionary agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971); *Acadian Gas Pipeline System v. FERC,* 878 F.2d 865 (5th Cir.1989) (reviewing court does not rubberstamp agency decisions; instead, review must be searching and careful).

Under this standard, the Board's decision may be reversed as an abuse of discretion when it is made without rational explanation or inexplicably departs from established policies. *Martinez–Montoya v. INS,* 904 F.2d 1018 (5th Cir.1990) ... Further, a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors extant. *Luciano–Vincente v. INS,* 786 F.2d 706 (5th Cir.1986).

Findings of fact supporting the Board's exercise of discretion, however, are reviewed merely to determine whether they are supported by substantial evidence.

*Diaz–Resendez v. INS,* 960 F.2d at 495 (citations omitted).


## APPLICABLE LAW

The panel in *Diaz–Resendez,* quoted with approval a test developed at Board level for determining whether an alien seeking relief under 8 U.S.C. § 1182(c) deserves a favorable exercise of discretion. The language merits reiteration:

The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.... Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record, and if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.... Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Diaz–Resendez,* 960 F.2d at 495–96 (quoting 16 I. & N. Dec. 581 (1978)).


A serious deportable offense requires the introduction of additional offsetting evidence. Moreover, those who have been convicted of serious drug offenses must produce evidence of unusual

or outstanding equities. An applicant with a criminal record will ordinarily be required to evidence rehabilitation before the legal leniency of 8 U.S.C. § 1182(c) will be evoked.

## ANALYSIS

The thrust of Villarreal's appeal is that the Board erred, by discretion abuse, in not affirming the immigration judge's finding of unusual and outstanding equities. As we have discussed earlier, our standard of review, unlike that of the Board, is not de novo but abuse of discretion. *Diaz–Resendez, supra* at 495. The Board did consider the fact that Villarreal's wife, children and other relatives were U.S. citizens and that some family hardship would result if the family moved to Mexico. On the other hand, the Board considered that Villarreal would likely acquire employment of economic importance in Mexico through the historic largess of Mrs. Villarreal's father or the employment in a brother's insurance agency and that the hardship on the youngest child would be ameliorated by the entire family's willingness to move to Mexico. The Board also observed that the oldest child, born in 1972, was not in school, and an across-the-border move would not be as disruptive to her as to her sister, born in 1978.

The Board gave thorough consideration to Villarreal's commission of a serious drug-related offense. We have described the offense earlier. On balance, the Board felt that the seriousness of the crime, the falsification of school entry records, the unsupported assertion that U.S. tax returns were not required and the questionable rehabilitation were not equalled or outweighed by the positive equities. Our review of the record leads us to conclude that the Board considered all relevant factors and meaningfully addressed Villarreal's assertions of hardship.[1] We find the Board's decision to be neither arbitrary nor an abuse of discretion. The decision of the Board is AFFIRMED.

---

[1]The facts of this case differ substantially from those reported in *Diaz–Resendez.* In *Diaz–Resendez,* the deportation would cause the breakup of a marriage, the children would be left fatherless, and severe economic hardship would be visited upon the family. Villarreal's wife and children, on the other hand, would join him in Mexico and economic sanctions would not be suffered by his family. The differences between the situations is dramatic and telling.