9 F.3d 108
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Najeib K. JABBAR, Petitioner,
v.
IMMIGRATION and NATURALIZATION SERVICE, Respondent.
 No. 92-3884.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before MILBURN, RYAN and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Najeib Khader Abdel Jabbar seeks review of a decision of the Board of Immigration Appeals ("BIA") denying his petition for a discretionary waiver of deportation under Section 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). On appeal, the issue presented is whether the Board's denial of section 212(c) relief was an abuse of discretion. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Petitioner is 36 years of age. He was born and raised in Ramallah on the West Bank of the Jordan River. This area was once part of Jordan; however, it has been controlled and occupied by the state of Israel since the Six Day War in 1967.
 
 
 3
 Petitioner was admitted to the United States for lawful permanent residence on February 14, 1977, and, except for a 19-day trip to Israel in September 1986 to visit his mother, he has remained in the United States. Petitioner initially resided in West New York, New Jersey. On August 2, 1978, he was charged in West New York, New Jersey, with four counts of possessing stolen property; he was placed on probation and was subsequently given a conditional discharge.[1]
 
 
 4
 Petitioner moved to Youngstown, Ohio, in 1979 and began operating a grocery store. On May 8, 1980, petitioner was charged in the Municipal Court of Youngstown with uttering with intent to defraud a driver's permit that had been tampered with. The charge, a fourth-degree felony, was reduced to a first-degree misdemeanor, and petitioner was placed on six months' probation.
 
 
 5
 On August 6, 1980, two charges of aggravated menacing were brought against petitioner in Youngstown Municipal Court. The first charge came about when petitioner put a knife to the throat and threatened to kill a 16 year-old boy on August 1, 1980. The second charge resulted when petitioner pulled a gun on a 17 year-old boy the next day. Petitioner asserts that the charges resulted when the youths approached petitioner seeking to sell merchandise that petitioner recognized as having previously been stolen from his store. According to petitioner, his actions were merely the result of his trying to detain the youths until the police arrived to arrest them. On September 16, 1980, petitioner was fined $50 plus costs as a result of his conviction on the second charge of aggravated menacing, and the first charge was dismissed.
 
 
 6
 In August 1981, petitioner and Linda Cahers, a U.S. citizen whom he had met while living in Youngstown, Ohio, moved to St. Louis, Missouri, where they were married. Petitioner again operated a grocery store. During the spring of 1982, Linda Jabbar was diagnosed as having liver cancer. Because the Jabbars did not have medical insurance, petitioner used funds from his grocery store to pay his wife's medical bills, and, as a consequence, he began postdating checks to his suppliers. Some of these checks were returned for insufficient funds. In March 1982, petitioner was arrested for passing bad checks. He was sentenced to four months in the city jail in October 1982. Thereafter, petitioner made complete restitution on every check. Also in March 1982, petitioner was convicted of selling liquor without a license, a misdemeanor.
 
 
 7
 Linda Jabbar died of liver cancer in a St. Louis Hospital in July 1982. On August 23, 1982, petitioner was arrested and convicted for the unauthorized purchase of approximately $4,000 in food stamps. In July 1983, petitioner was released on parole after having served eight months of his two-year sentence.
 
 
 8
 Petitioner returned to St. Louis, Missouri. Thereafter, he requested permission from his parole officer to leave St. Louis and move to Ohio. Although such permission was not granted, petitioner moved to Clinton, Ohio, on or about November 1983. Petitioner lived in Clinton, Ohio, until December 1985. During that time, petitioner met a U.S. citizen, Glendine Cushfield, and fathered a son, Dustin Cushfield, who was born in May 1985. Petitioner visited and supported Dustin Cushfield while he resided in Clinton, Ohio.
 
 
 9
 Due to the unauthorized move from St. Louis to Clinton, Ohio, petitioner's parole was revoked in May 1985, and he was returned to custody, serving three months in the United States penitentiary in Marion, Illinois. While he resided in Clinton, Ohio, petitioner, along with his partner, Dennis Schaeffer, operated a grocery store. Schaeffer had opened a checking account for the grocery store, and had authorized petitioner to issue checks to suppliers from the account. Sometime in late 1984, Schaeffer withdrew the funds from the checking account, allegedly without telling petitioner that he had done so. As a result, checks that petitioner had sent to the store's suppliers were returned for insufficient funds. In December 1985, petitioner was arrested and convicted of passing bad checks. Petitioner was placed on probation as he had been paying restitution.
 
 
 10
 Also, in its brief on appeal, the INS asserts that on May 25, 1985, a "felony theft/fraud checks" warrant was issued against petitioner by the sheriff's office of Yellowstone, Montana, because petitioner overdrew his personal checking account in a Montana bank by approximately $2,700.00 in a two-month period. This case was dismissed before service of the warrant when petitioner made full restitution. Furthermore, on September 20, 1985, petitioner was arrested based upon a warrant issued by the St. Louis County, Missouri, police department, resulting from his payment for merchandise which he purchased on May 3, 1984, with two $5,000 checks which were returned for insufficient funds. The arrest warrant was issued after petitioner failed to respond to inquiries from the police and the victim's bank.[2]
 
 
 11
 In early 1986, petitioner moved to Akron, Ohio, and was hired by supermarket owner, Ribhi Kahook, to manage a grocery store. The business, characterized as a country store, is located in an area with many elderly people who do not own cars. The store is the only grocery store in the area, and many of the local residents are dependent on it.
 
 
 12
 In May 1986, petitioner married a U.S. citizen, Teresa Diane McGee, in Akron, Ohio. They have a son, Samir, who was born in August 1987. Teresa Jabbar testified that her husband was a good father. She also testified that if her husband were deported, she would like to go with him; however, she stated that since she speaks only English, has never been out of the United States, and her entire family lives in the United States, she and her son would remain in the United States if her husband is deported. She further testified that she has asthma and that her doctors have told her that she would be ill almost all of the time if she moved to the dry climates of either Israel or Jordan. Finally, Teresa Jabbar testified that she works as a waitress and earns approximately $200 every two weeks.
 
 
 13
 The grocery business in Akron proved profitable, and in 1987 petitioner contracted with Ribhi Kahook to purchase the grocery store which he was operating. Petitioner made monthly payments of $3,000 toward the purchase. Mr. Kahook testified that the payments were to be made for a four-year or five-year period, but he could not remember which and that petitioner was current with his payments. Petitioner's income from his grocery store in the year preceding his deportation hearing was $22,000.00.
 
 
 14
 On June 16, 1986, plaintiff was convicted in the Common Pleas Court of Summit County, Ohio, of one first-degree misdemeanor and three fourth-degree felony counts of passing bad checks and three fourth-degree felony counts of theft. He was placed on three years probation. Finally, petitioner also has a 1987 conviction for what appears to be a liquor license violation.
 
 B.
 
 15
 The INS instituted deportation proceedings against petitioner on September 4, 1985, with the issuance of an order to show cause, charging that petitioner was deportable under 8 U.S.C. Sec. 1251(a)(4) on the basis of two Missouri state court convictions of October 8, 1982, for passing checks on nonexistent bank accounts with intent to defraud, and also a conviction in the United States District Court for the Eastern District of Missouri on November 18, 1982, for the unauthorized acquisition and possession of food stamps.
 
 
 16
 A telephonic deportation proceeding was conducted on September 10, 1987, between an immigration judge, petitioner, his counsel, and INS trial counsel. During the telephonic proceeding, petitioner's counsel denied deportability on petitioner's behalf and requested the opportunity to apply for relief from deportation under section 212(c) of the Act, 8 U.S.C. Sec. 1182(c).
 
 
 17
 Additional proceedings were held in Cleveland, Ohio, on January 12, 1988. At these proceedings, petitioner's attorney admitted all but one of the allegations in the show cause order of September 4, 1985, and admitted petitioner's deportability. Immediately thereafter, an evidentiary hearing was held on petitioner's section 212(c) application which had been filed on September 23, 1987.
 
 
 18
 The following day, in an oral decision, the immigration judge denied petitioner's application for a discretionary waiver of deportation and ordered petitioner deported to Israel. Specifically, the immigration judge found that after balancing the positive and negative factors present in the case, the negative factors, namely, that
 
 
 19
 [s]ince being in the United States [petitioner] has committed nine felonies and three misdemeanors. Since he entered the United States he has violated his parole on at least one occasion and as recently as June 16, 1986, was convicted for three felonies concerning passing bad checks,
 
 
 20
 outweighed the positive factors. J.A. 19.
 
 
 21
 A timely appeal of the immigration judge's decision was filed with the BIA. On July 8, 1992, the BIA affirmed the immigration judge's decision finding that petitioner's 1978 conviction of four counts of receiving "stolen property" had been expunged and should not have been considered by the immigration judge, but that even in the absence of the 1978 conviction, petitioner's "long criminal record amply supported the immigration judge's discretionary denial of section 212(c) relief." J.A. 7. This timely appeal followed.
 
 II.
 A.
 
 22
 Petitioner challenges the decision of the BIA affirming the decision of the immigration judge ("IJ"). He argues that the BIA substituted its judgment for that of the IJ without making a full review of the record. Specifically, petitioner asserts: (1) that the BIA erred in finding that the IJ's consideration of his 1978 convictions from West New York, New Jersey, was harmless error; (2) that the BIA employed improper criteria for the review of his case; and (3) that the BIA erred in finding that he was convicted of serious crimes.
 
 
 23
 Pursuant to 8 U.S.C. Sec. 1105a(a) this court has jurisdiction to review all final orders of deportation. Cordoba-Chaves v. INS, 946 F.2d 1244, 1246 (7th Cir.1991). Because the BIA's decision is the final order of deportation, that decision is reviewed rather than the decision of the IJ. Akrap v. INS, 966 F.2d 267, 271 (7th Cir.1992).
 
 
 24
 Section 212(c) of the Immigration and Nationality Act provides that "[a]liens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [certain specified grounds of exclusion]." 8 U.S.C. Sec. 1182(c). The statute has also been interpreted to apply to lawful permanent residents who have not left the United States but have met the seven-year requirement and are facing deportation. Cordoba-Chaves, 946 F.2d at 1247; Matter of Silva, 16 I. & N.Dec. 26 (BIA 1976). However, a demonstration of statutory eligibility for a waiver under section 212(c) does not automatically result in an indiscriminate waiver of deportation. Matter of Buscemi, 19 I. & N.Dec. 628, 633 (BIA 1988). Rather, whether an alien merits relief under section 212(c) is a determination which the Attorney General or his delegate is required to make as a matter of discretion, with the alien having "the burden of demonstrating that his application merits favorable consideration." Blackwood v. I.N.S., 803 F.2d 1165, 1167 (11th Cir.1986) (per curiam); Matter of Marin, 16 I. & N.Dec. 581, 583 (BIA 1978). See also Craddock v. INS, No. 92-3613, 1993 WL 248686 (6th Cir. July 12, 1993); Gonzales v. INS, No. 92-3555, 1993 WL 194325 (6th Cir. June 10, 1993).
 
 
 25
 Neither the statute nor the applicable regulation contains provisions specifying the circumstances under which such discretion should be exercised. See 8 U.S.C. Sec. 1182(c); 8 C.F.R. Sec. 213.3. "Typically, deference is given to the Board's interpretation of the Act unless there are persuasive indicators that the Board erred." Diaz-Resendez v. INS, 960 F.2d 493, 495 (5th Cir.1992) (citing Zamora-Morel v. INS, 905 F.2d 833, 838 n. 2 (5th Cir.1990)).
 
 
 26
 The Board's denial of an applicant's petition for relief under section 212(c) is reviewed only to determine if the denial was arbitrary, capricious, or an abuse of discretion. Joseph v. INS, 909 F.2d 605, 607 (1st Cir.1990); Blackwood, 803 F.2d at 1168; Young v. INS, 759 F.2d 450, 455 n. 6 (5th Cir.), cert. denied, 474 U.S. 996 (1985). The denial will be upheld unless it was done without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis--such as invidious discrimination against a particular race or group. Diaz-Resendez, 960 F.2d at 495; Hazzard v. INS, 951 F.2d 435, 438 (1st Cir.1991); Joseph, 909 F.2d at 607; Balani v. INS, 669 F.2d 1157, 1161 (6th Cir.1982) (per curiam). Further, the BIA's decision may be found to be arbitrary if the Board fails to meaningfully address all of the material factors extant in the case. Diaz-Resendez, 960 F.2d at 495. Finally, in a case such as this where administrative discretion is exercised, "findings [of fact] are sufficient if the written decision of the administrative agency or the record of the administrative hearing sets out clearly the ground which forms the basis for the denial of the discretionary relief, so that a reviewing court is able to ascertain whether the decision is arbitrary or capricious." Blackwood, 803 F.2d at 1168.
 
 B.
 
 27
 The test developed at the Board level for determining whether an alien seeking relief under section 212(c) deserves a favorable exercise of discretion was set forth in Marin, 16 I. & N.Dec. at 584-85:
 
 
 28
 [e]ach case must be judged on its own merits. The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.
 
 
 29
 ... Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.
 
 
 30
 ... Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives).
 
 
 31
 The equities that an applicant for relief under section 212(c) must bring forward will depend upon the nature and circumstances of each particular case. As the negative factors present in a case become more serious, the applicant faces a heightened requirement "to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." Id. at 585. The necessity of demonstrating unusual or outstanding equities may be mandated by a single serious crime or "because of a succession of criminal acts, which together establish a pattern of serious criminal misconduct." Buscemi, 19 I. & N.Dec. at 633.
 
 
 32
 Further, where an applicant for relief under section 212(c) has a criminal record, the applicant "will ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion." Id. at 634. Nonetheless, rehabilitation is not "an absolute prerequisite to a favorable exercise of discretion." Matter of Edwards, Interim Dec. 3134 at 5 (BIA 1990). "Rather, section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion." Id. Finally, even where an alien demonstrates unusual or outstanding equities, he "merely satisfies the threshold test for having a favorable exercise of discretion considered in his case; such a showing does not compel that discretion be exercised in his favor." Buscemi, 19 I. & N.Dec. at 633.
 
 
 33
 When the BIA's decision in this case is reviewed based upon the test set forth in Diaz-Resendez, Hazzard, Joseph, and Balani, its decision shall be affirmed. In this case, the BIA considered all the relevant factors which are extant in the case, determined that the adverse or negative factors outweighed the positive equities which Jabbar had presented in his favor, and the BIA set forth a rational explanation for its decision. Furthermore, the BIA's decision does not rest on any impermissible basis and the decision is in accord with the BIA's policies, as set forth in Marin, Buscemi, and Edwards, as well as with those precedents which have affirmed BIA decisions utilizing the balancing approach set forth in Marin.
 
 
 34
 In his challenge to the BIA's decision, petitioner Jabbar argues that the BIA erred in determining that the IJ's consideration of the 1978 charges for receiving stolen property was harmless error. In his brief on appeal, petitioner states:
 
 
 35
 Neither the BIA nor this Court can possibly divine how the immigration judge might have weighed the equities absent his erroneous consideration of the 1978 charges, and whether his discretionary ruling was affected thereby. Only the immigration judge who heard the testimony and observed the witnesses, can know the effect of the 1978 charges on his determination.
 
 
 36
 Appellant's brief, p. 8. Petitioner further argues that the BIA, in light of its finding that the 1978 charges for receiving stolen property should not have been included in the IJ's decision, applied improper criteria for its review. In its order the BIA stated:
 
 
 37
 Since we are affirming the immigration judge's evaluation of the favorable and negative factors in this case, we need not here engage in a line-by-line balancing of the respondent's [Jabbar's] equities against his criminal history.
 
 
 38
 J.A. 7. Petitioner argues, however, that the BIA did not simply affirm the IJ's decision; rather, it substituted its decision for that of the IJ but did not rebalance the factors. Petitioner asserts that
 
 
 39
 [i]t is not sufficient for the Board to say that the immigration judge could have ruled the way he did based upon the record. The Board does not and cannot say how the immigration judge would have ruled had his analysis been made without the additional, improperly admitted factors.
 
 
 40
 Appellant's brief, p. 9.
 
 
 41
 However, the BIA has the discretionary power to conduct de novo review of an IJ's decision. Hazzard, 951 F.2d at 440 n. 4 (citing Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986), and Matter of Vilanova-Gonzalez, 13 I. & N.Dec. 399, 402 (BIA 1969)). Furthermore, where the BIA makes supplemental findings, there is "no sound basis, either in law or reason, for concluding that the BIA was thereby disabled from upholding the immigration judge's decision. The BIA 'has full power to determine factual issues in cases before it' ". Hazzard, 951 F.2d at 440 (quoting 1 C. Gordon & S. Mailman, Immigration Law and Procedure, Sec. 3.05[b] at p. 3-57).
 
 
 42
 In this case, the BIA's exercise of its authority for de novo review is shown by the Board's action. Rather than merely stating that there was no basis upon which to reverse the IJ's decision, it ratified and adopted the IJ's decision to deny the waiver of deportation "for the reasons stated therein." J.A. 5. It, however, added its own supplemental findings that the negative factors outweighed the positive equities, even in the absence of the 1978 receiving stolen property charges; that the evidence of rehabilitation was unsatisfactory; and it stated reasons for its finding. The BIA further found that even if petitioner had made an adequate showing of rehabilitation, it would still be insufficient to offset his lengthy and serious criminal record. Therefore, since the BIA adopted the IJ's balancing of the positive equities and negative factors as its own, to require the BIA to engage in a line-by-line balancing of the equities would result in needless duplication of effort. Moreover, the BIA has no duty to write an exegesis on every contention presented to it. See Osuchukwu v. INS, 744 F.2d 1136, 1142 (5th Cir.1984).
 
 C.
 
 43
 Petitioner's final contention on appeal is that the Board erred in concluding that he was convicted of serious crimes. According to petitioner,
 
 
 44
 [b]oth the BIA and the immigration judge referred to [petitioner's] crimes as "serious crimes" clearly (sic) they are not.
 
 
 45
 * * *
 
 
 46
 * * *
 
 
 47
 The BIA decision does not discuss the specific crimes or the circumstances under which they occurred. It instead chooses to deride [petitioner's] explanations for his conduct, without any suggestion that those explanations were really even considered. More important, Petitioner gave explanations for his actions which, while not excusing them, would mitigate his culpability.
 
 
 48
 Appellant's brief, p. 15. Petitioner goes on to state that without wishing to sound disrespectful, a person who has written a bad check to one of his suppliers has not committed a crime which would indicate that he poses a danger to the community.
 
 
 49
 With regard to petitioner's assertion that the BIA failed to discuss the specific crimes he committed or their specific circumstances, we noted above that the BIA adopted the IJ's decision to deny the waiver of deportation "for the reasons stated therein." J.A. 5. As part of the IJ's decision, the IJ balanced the equities of the case, and, in so doing, the IJ discussed petitioner's specific crimes, the circumstances of each, and the explanations which petitioner gave for the crimes. Thus, since the IJ had engaged in such a discussion, it was hardly necessary for the BIA to repeat the exercise.
 
 
 50
 Further, with regard to petitioner's assertion that he was not convicted of "serious crimes," a showing of outstanding equities may be required for a waiver of deportation "because of a succession of criminal acts, which together establish a pattern of serious criminal misconduct." Buscemi, 19 I. & N.Dec. at 633.
 
 
 51
 Such a pattern of criminal misconduct is present here. The IJ noted in his decision that
 
 
 52
 [s]ince being in the United States, [petitioner] has committed nine felonies and three misdemeanors. Since he entered the United States he has violated his parole on at least one occasion and as recently as June 16, 1986 was convicted for three felonies concerning passing bad checks.
 
 
 53
 J.A. 19. In affirming the IJ's balancing of the equities in this case, the BIA stated:
 
 
 54
 we will address the issue of [petitioner's] alleged rehabilitation.... We agree ... that [petitioner] has not adequately established genuine rehabilitation from his criminal propensities, given the long and repeated nature of his criminal history. We note that, as late as June 16, 1986, the [petitioner] was placed on probation for conviction, yet again, of seven counts of passing bad checks and theft, all but one of which were felonies. This conviction occurred after deportation proceedings had been instituted against him and less than 2 years prior to his hearing. Notwithstanding a subsequent favorable probation report, his lengthy criminal record is too recent and varied and, although he professed self-serving regret for his crimes, he has been too quick to portray himself as a victim of circumstance in regard to each conviction.
 
 
 55
 J.A. 7. Further, with regard to petitioner's contention that writing bad checks does not make him a danger to the community, it should be noted that at least one of petitioner's convictions involved threatening a 17 year-old boy with a gun. Moreover, as the BIA stated in Marin, the purpose of the balancing of factors is to determine whether the granting of section 212(c) relief to an alien is in the best interests of this country, not whether the alien is a danger to the community. 16 I. & N.Dec. at 583-84. In this case, defendant, having been in this country as a lawful permanent resident for little more than 16 years, has compiled a lengthy list of criminal convictions, for which the BIA concluded that he shows little propensity towards rehabilitation. Given the circumstances of this case, it cannot be stated that the BIA erred in adopting the balancing of factors performed by the IJ in which the IJ concluded that it would not be in the best interests of this country to grant section 212(c) relief to the petitioner.
 
 III.
 
 56
 For the reasons stated, the BIA is AFFIRMED.
 
 
 
 [1]
 The BIA found that the conditional discharge for this conviction was, in effect, the equivalent of an expungement of the conviction, and, therefore, the immigration judge should not have considered this conviction in rendering his decision
 
 
 [2]
 No record exists concerning the disposition of these charges. Petitioner told a probation officer in another jurisdiction that the charges were dismissed because he had postdated the checks